STATE OF NEBRASKA, APPELLEE, V. SHARON T. MCKEE, APPELLANT.

568 N.W.2d 559

Filed September 5, 1997.   No. S-96-774.

Peter C. Bataillon for appellant.

Donald Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BOSLAUGH and GRANT, JJ., Retired.

PER CURIAM.

Sharon T. McKee was charged in the county court for Lancaster County for knowingly violating a protection order entered pursuant to Neb. Rev. Stat. § 42-924 (Reissue 1993). McKee moved to dismiss the charge on the grounds that § 42-924 is violative of the First Amendment to the U.S. Constitution. The county court overruled McKee's motion, the jury returned a guilty verdict, and McKee was fined $500. On appeal, the district court for Lancaster County affirmed the verdict.

We conclude that McKee's speech was protected by the First Amendment. Accordingly, we reverse, and remand for a new trial with directions for the county court to instruct the jury that it may consider only McKee's conduct in determining whether she violated the protection order.

## I. BACKGROUND

On December 23, 1994, Dr. Winston D. Crabb, an obstetrician and gynecologist, obtained a protection order against McKee from the district court for Lancaster County. The protection order, in pertinent part, prohibited McKee from "[h]arassing [Crabb] either by telephone or in person." The term "harass" was defined in the order as "engaging in a knowing and willful course of conduct directed at [Crabb] which seriously terrifies, threatens or intimidates [Crabb] and which served no legitimate/lawful purpose." This prohibition was to be in place for a period of 1 year.

On April 17, 1995, McKee and another individual, Melissa Abbink, went to the parking lot of Crabb's office building. As Crabb got out of his car, approximately 30 to 40 feet away from the building, McKee and Abbink approached Crabb from behind and followed him inside the building. As Crabb walked from his car to the building, McKee remained 6 to 8 feet away from him, and while Crabb waited inside the office building for the elevator, McKee remained 3 to 4 feet away from him.

During this time, McKee tape-recorded what she said to Crabb. The tape recording, which was admitted into evidence at trial, demonstrated that McKee stated, "By the way, Winston [Crabb], they dropped [the previous charge brought against me]. It's a waste of time calling the police. You don't need the police, you need to stop killing babies. That's what you need to do—killing beautiful, unborn children . . . ." Once the elevator opened, Crabb entered, and McKee left the office building.

Crabb contacted the Lincoln Police Department after the encounter. Crabb explained to the police what had happened and stated that he had not felt threatened or frightened, but that he did feel intimidated. However, at trial, Crabb testified that upon further reflection he thought that he felt threatened and again stated that he felt intimidated.

McKee was charged with knowingly violating a protection order issued pursuant to § 42-924. McKee pled not guilty and filed a motion in limine requesting that the county court allow her to present evidence at trial concerning the beginnings of life, the effects of abortion, and the present status of the law regarding abortion. The county court overruled McKee's motion in limine, and McKee made an offer of proof, stating that the purpose of the evidence was to demonstrate that her acts were committed for a legitimate purpose. McKee also filed a motion to dismiss, asserting that the underlying statute was unconstitutional on its face and/or as applied. This motion was also denied.

Both Crabb and McKee testified at trial. McKee's motions for directed verdict, at the conclusion of the State's case and at the conclusion of all the evidence, were overruled. At the instruction conference, McKee objected to the county court's refusal to give her proposed instruction No. 3, which advised the jury that the word "seriously" modified the words "terrifies," "threatens," and "intimidates" when used to describe the term "harass." McKee also objected to the county court's refusal to give her proposed instruction No. 4, which defined the term "intimidate" as "to make timid or fearful; to frighten."

The jury returned a guilty verdict, and McKee was fined $500. On appeal, the district court for Lancaster County affirmed the verdict.

## II. ASSIGNMENTS OF ERROR
Restated and reorganized, McKee asserts that the district court erred in affirming the county court's (1) overruling of her motion to dismiss for the reason that § 42-924 is unconstitutional on its face and/or as applied, (2) overruling of her motion in limine, (3) refusal to submit her proposed instructions to the jury, and (4) finding that the verdict was sustained by sufficient evidence.

## III. STANDARD OF REVIEW
The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by a trial court. *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996); *State v. Bainbridge*, 249 Neb. 260, 543 N.W.2d 154 (1996).

## IV. ANALYSIS

McKee asserts that the district court erred in affirming the county court's overruling of her motion to dismiss for the reason that § 42-924 is unconstitutional on its face and/or as applied. Section 42-924 states, in pertinent part:

> (1) Any victim of domestic abuse or any victim who has been willfully and maliciously harassed by a person who had the intent to terrify, threaten, or intimidate the victim as prohibited by section 28-311.03 may file an application and affidavit for a protection order by making a showing of such conduct with any judge of a district court or a conciliation court. Upon the filing of such an application and affidavit in support thereof, the judge or court may issue a protection order without bond enjoining the adverse party from (a) imposing any restraint upon the person or liberty of the applicant or (b) threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the applicant.

> . . . .

> (3) . . . An order issued pursuant to subsection (1) or (2) of this section shall specify that it is effective for a period of one year unless otherwise modified by the court. Except as provided in section 28-311.04, any person who knowingly violates an order issued pursuant to subsection (1) or (2) of this section after service shall be guilty of a Class II misdemeanor.

### 1. FACIAL CHALLENGE

As for McKee's facial challenge to § 42-924, under Nebraska law, a motion to quash or a demurrer is the proper procedural method for challenging the facial validity of a statute. *State v. Carpenter, supra; State v. Conklin,* 249 Neb. 727, 545 N.W.2d 101 (1996). See, also, Neb. Rev. Stat. §§ 29-1808 and 29-1810 (Reissue 1995). In the instant case, McKee entered a plea of not guilty on May 10, 1995, without previously filing a motion to quash or demurrer. She first challenged the constitutionality of § 42-924 in a motion to dismiss filed on July 5. A motion to dismiss is not a proper procedural method for challenging the facial validity of a statute. As a result, we will not consider

McKee's facial challenge to § 42-924 because it was not properly preserved for appeal.

### 2. "As Applied" Challenge

However, challenges to the constitutionality of a statute as applied to the defendant are properly preserved by a plea of not guilty. *State v. Conklin, supra; State v. Saulsbury,* 243 Neb. 227, 498 N.W.2d 338 (1993). Therefore, we must determine whether § 42-924 is constitutional as applied to McKee. In order to make this determination, we must analyze what McKee said to Crabb separate from McKee's conduct toward Crabb.

### (a) Speech

The First Amendment to the U.S. Constitution states in pertinent part that "Congress shall make no law . . . abridging the freedom of speech . . . ." See, also, Neb. Const. art. I, § 5. It has become axiomatic, however, that the protection granted by the First Amendment is not absolute in that it does not protect all speech. See, *State v. Schmailzl,* 243 Neb. 734, 502 N.W.2d 463 (1993); *State v. Monastero,* 228 Neb. 818, 424 N.W.2d 837 (1988).

> "[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . ."

*State v. Schmailzl,* 243 Neb. at 741, 502 N.W.2d at 468 (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)). Categories added to this list of unprotected speech include threatening or intimidating speech. See, *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 114 S. Ct. 2516,

129 L. Ed. 2d 593 (1994); *U.S. v. J.H.H.*, 22 F.3d 821 (8th Cir. 1994). See, also, *State v. Schmailzl, supra.*

Thus, our main inquiry in addressing McKee's assertion that the county court erred in failing to grant McKee's motion to dismiss is to determine whether the words she spoke to Crabb fall into any of the categorical exceptions to the First Amendment's definition of protected speech. However, in order to make this determination, we first must distinguish the role of the fact finder from that of the court in determining whether a protection order violates the First Amendment.

In *Dennis v. United States*, 341 U.S. 494, 71 S. Ct. 857, 95 L. Ed. 1137 (1951), the defendants were charged with conspiring to organize the Communist Party as a group to teach and advocate the overthrow of the government of the United States by force and violence. In explaining the application of the then applicable clear and present danger rule, the trial court instructed the jury:

> " 'If you are satisfied that the evidence establishes beyond a reasonable doubt that the defendants, or any of them, are guilty of a violation of the statute, as I have interpreted it to you, I find as a matter of law that there is sufficient danger of a substantive evil that the Congress has a right to prevent to justify the application of the statute under the First Amendment of the Constitution.

> " 'This is matter of law about which you have no concern. It is a finding on a matter of law which I deem essential to support my ruling that the case should be submitted to you to pass upon the guilt or innocence of the defendants. . . .' "

*Dennis v. United States*, 341 U.S. at 512.

On appeal, the defendants asserted that the trial court erred in making this statement to the jury concerning the application of the First Amendment. A plurality of the U.S. Supreme Court disagreed, stating that the defendants' argument "rests on the theory that a jury must decide a question of the application of the First Amendment." *Dennis v. United States*, 341 U.S. at 513. The opinion elaborated:

> When facts are found that establish the violation of a statute, the protection against conviction afforded by the

First Amendment is a matter of law. . . . Whether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a judicial determination of the scope of the First Amendment applied to the circumstances of the case.

*Dennis v. United States*, 341 U.S. at 513. See, also, *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (inquiry into protected status of speech is one of law, not fact); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) (in cases raising First Amendment issues, appellate court has obligation to " " " 'make an independent examination of the whole record' " ' " in order to make sure that " ' "the judgment does not constitute a forbidden intrusion on the field of free expression" ' ") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

Thus, while we are mindful that the jury found that McKee violated the protection order, the question as to whether the words that led to her conviction are protected by the First Amendment is one of law that must be determined by this court.

The steadfast rule is that " 'in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment.' " *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 774, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994) (quoting *Boos v. Barry*, 485 U.S. 312, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988)). In describing the confines of the First Amendment, this court has stated that " 'speech protected by the first amendment to the U.S. Constitution includes the free expression or exchange of ideas, the communication of information or opinions, and the dissemination and propagation of views and ideas, as well as the advocacy of causes.' " *State v. Schmailzl*, 243 Neb. 734, 502 N.W.2d 463 (1993) (quoting *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988)).

The U.S. Supreme Court held that the standard time, place, and manner analysis is not sufficiently rigorous for evaluating a content-neutral injunction that restricts speech and held that the test is "whether the challenged provisions . . . burden no more speech than necessary to serve a significant government interest." *Madsen v. Women's Health Center, Inc.*, 512 U.S. at 765.

The *Madsen* standard was applied in *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 117 S. Ct. 855, 137 L. Ed. 2d 1 (1997). In *Schenck*, the Court in applying the *Madsen* standard upheld enforcement of a 15-foot fixed buffer zone around abortion clinics, doorways, entrances to parking lots, and driveways. However, the Court struck down the part of the injunction that enforced a 15-foot floating buffer zone around persons or vehicles leaving or entering as burdening more speech than necessary.

Although *Madsen* and *Schenck* involved the enforcement of an injunction, we conclude that a protection order regulating the actions of an individual is analogous to an injunction and accordingly apply the *Madsen* standard.

Notwithstanding that *Madsen* involved a previolation facial challenge to an injunction prohibiting various antiabortion activities, the *Madsen* standard has been applied to "as applied" challenges. See *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 929 P.2d 596, 60 Cal. Rptr. 2d 277 (1997). As such, we apply the standard put forth in *Madsen* in determining whether the protection order at issue is valid.

As set forth above, the record is conclusive as to what McKee stated to Crabb on April 17, 1995: "By the way, Winston [Crabb], they dropped [the previous charge brought against me]. It's a waste of time calling the police. You don't need the police, you need to stop killing babies. That's what you need to do—killing beautiful, unborn children . . . ."

As McKee's words make clear, she is opposed to abortion and believes it would be futile for Crabb to contact the police concerning the expression of her views. While Crabb may disagree with McKee's views, she is entitled to state her opinion within the confines of the First Amendment. Upon our independent review of the evidence, we conclude as a matter of law that McKee's speech was not threatening, intimidating, or terrifying and is thus protected by the First Amendment. Moreover, we determine that any application of the protection order which would prohibit such speech necessarily burdens more speech than necessary to serve any relevant governmental interest. Accordingly, we conclude that § 42-924 was applied to McKee, through the protection order, in an unconstitutional manner.

### (b) Conduct

However, besides speaking to Crabb, McKee also came up behind Crabb as he got out of his car and followed him across the parking lot into the office building housing his clinic. While McKee's speech is protected, there is sufficient evidence to submit to the jury to determine whether McKee's conduct violated the protection order. Because we do not know whether the jury based its conviction upon McKee's speech, her conduct, or both, we reverse, and remand for a new trial with directions for the county court to instruct the jury that it may consider only McKee's conduct in determining whether McKee "harassed" Crabb as prohibited by the protection order. We determine that McKee's other assigned errors are without merit.

### V. CONCLUSION

We conclude that McKee's speech was protected by the First Amendment. Accordingly, we reverse, and remand for a new trial with directions for the county court to instruct the jury that it may consider only McKee's conduct in determining whether she violated the protection order.

REVERSED AND REMANDED FOR A NEW TRIAL.

CAPORALE, J., dissenting.

I agree that the failure of the defendant-appellant, Sharon T. McKee, to have filed a motion to quash forecloses her from making a facial challenge to the injunction entered pursuant to Neb. Rev. Stat. § 42-924 (Reissue 1993). Stated another way, having violated the protection order and having failed to move to quash this proceeding against her, she is limited to challenging the application, that is to say, the enforcement, of the order; she cannot challenge its issuance or its provisions.

I also agree that the standard to be applied in previolation facial challenges to content-neutral injunctions is to ask whether the questioned provisions burden no more speech than necessary to serve a significant government interest. *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 117 S. Ct. 855, 137 L. Ed. 2d 1 (1997); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994).

I respectfully submit, however, that the *Schenck-Madsen* standard does not control in a challenge to an injunction or pro-

tection order as applied or enforced, which is the challenge presented here. Contrary to the majority's reading of *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 929 P.2d 596, 60 Cal. Rptr. 2d 277 (1997), I do not understand it to apply the *Schenck-Madsen* standard to an "as applied" challenge. The trial court in *People ex rel. Gallo* entered a preliminary injunction prohibiting the appellants, alleged to be members of a street gang, from engaging in certain behavior in a particular neighborhood, including standing, sitting, walking, driving, gathering, or appearing in public view together, and confronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting, battering, or assaulting and battering any neighborhood resident known to have complained about gang activities. Unlike the situation here, the *People ex rel. Gallo* appellants had not violated the injunction and did not allege that a specific instance of its enforcement violated their constitutional rights. Thus, while the appellants argued that as applied to their conduct, it was broader than constitutionally sustainable, they challenged the granting of the injunction on its face. I therefore submit that *People ex rel. Gallo* does not extend the *Schenck-Madsen* standard to an as applied or enforced challenge.

Moreover, if the *People ex rel. Gallo* court had done so, the extension would not have been required by the *Schenck-Madsen* holdings. Because an injunction binds only those named in it or in privity with them, *In re Contempt of Liles*, 217 Neb. 414, 349 N.W.2d 377 (1984), every challenge to an injunction can be said, in that sense, to be an as applied challenge. I suggest it was in recognition of that fact that the *People ex rel. Gallo* court, in holding there had been no abuse of discretion in granting the injunction, wrote: "Our conclusion with respect to the defendants' 'overbreadth' claim does not mean they may not be heard to complain that the provisions of the preliminary injunction— as applied to *them* and their conduct in [the neighborhood]—are broader than constitutionally sustainable." (Emphasis in original.) 14 Cal. 4th at 1114, 929 P.2d at 611, 60 Cal. Rptr. 2d at 292.

Whether an injunction or protection order burdens no more speech than necessary to serve a significant government interest is irrelevant when the only issue properly before the court is

whether the conduct alleged to have violated the injunction is constitutionally protected. In *Board of Trustees, State Univ. of N. Y. v. Fox*, 492 U.S. 469, 483, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989), the U.S. Supreme Court reasoned that because one asserting the commercial-speech narrow-tailoring rule may not challenge facially a statute as overbroad, the relevant "as applied" inquiry becomes, " 'Is . . . *appellants' advertisement* outside the scope of basic First Amendment protection?' " (Emphasis in original.) Thus, in the instant case, instead of being concerned with whether the injunction burdened no more speech than necessary to serve a significant government interest, the majority should have been concerned with whether, in the context of her conduct, McKee's speech was protected by the First Amendment.

The U.S. Supreme Court has expressly recognized that "both the content and the context of speech are critical elements of First Amendment analysis . . . ." *FCC v. Pacifica Foundation*, 438 U.S. 726, 744, 98 S. Ct. 3026, 57 L. Ed. 2d 1073 (1978). As noted in *Federal Election Com'n v. Furgatch*, 807 F.2d 857, 863 (9th Cir. 1987), *cert. denied* 484 U.S. 850, 108 S. Ct. 151, 98 L. Ed. 2d 106:

> The problem of the context of speech goes to the heart of some of the most difficult First Amendment questions. The doctrines of subversive speech, "fighting words," libel, and speech in the workplace and in public fora illustrate that when and where speech takes place can determine its legal significance. In these instances, context is one of the crucial factors making these kinds of speech regulable. First Amendment doctrine has long recognized that words take part of their meaning and effect from the environment in which they are spoken.

According to the U.S. Court of Appeals for the 11th Circuit, "Whether words are 'fighting' words, that is, words 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace,' [citation omitted] depends 'upon the circumstances of their utterance.' " *Wilson v. Attaway*, 757 F.2d 1227, 1246 (11th Cir. 1985). In short, while the First Amendment certainly protects McKee in expressing her antiabortion views in some contexts, it does not protect her in all contexts.

I fail to see how accosting Dr. Winston D. Crabb at the parking lot to his office, following him into his office building at a distance of 6 to 8 feet, calling him a baby killer while 3 to 4 feet from him by proclaiming that he needs to "stop killing babies," and telling him that calling the police would be to no avail falls under the protection of the First Amendment. McKee did not approach Crabb to debate her opinions about abortion; she confronted him to harass and abuse him and perhaps to provoke him into responding inappropriately or even illegally. " ' "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.". . .' " *State v. Schmailzl*, 243 Neb. 734, 741, 502 N.W.2d 463, 468 (1993) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)).

I would thereform affirm the judgment of the district court in its entirety.

GRANT, J., Retired, joins in this dissent.