IN RE INTEREST OF JEFFREY K., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. JEFFREY K., APPELLANT.
717 N.W.2d 499

Filed June 27, 2006.    No. A-05-1033.

Thomas C. Riley, Douglas County Public Defender, and David J. Tarrell for appellant.

Stuart J. Dornan, Douglas County Attorney, Amy Schuchman, and Stacy Jo Ferrel, Senior Certified Law Student, for appellee.

INBODY, Chief Judge, and IRWIN and CARLSON, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jeffrey K. appeals an adjudication by the separate juvenile court of Douglas County finding the allegations in the State's petition to be true. The court found that Jeffrey had committed the criminal offense of stalking as defined in Neb. Rev. Stat. § 28-311.03 (Cum. Supp. 2004). Jeffrey asserts on appeal that § 28-311.03 is unconstitutional, that application of § 28-311.03 on the facts of the present case is an unconstitutional infringement of Jeffrey's free speech rights, and that there was insufficient evidence to support the court's adjudication. We are without jurisdiction to rule on Jeffrey's constitutional challenges to § 28-311.03, but we find that there was not sufficient evidence to support a finding that Jeffrey violated § 28-311.03. We reverse.

## II. BACKGROUND

On April 15, 2005, the State filed a petition seeking to have Jeffrey adjudicated by the juvenile court for allegedly violating

§ 28-311.03. The State alleged that Jeffrey had willfully harassed the victim with the intent to injure, terrify, threaten, or intimidate her. The events giving rise to this petition allegedly occurred between September and November 2004 at the school attended by both Jeffrey and the victim.

At the adjudication hearing, the victim testified about the conduct which led to the filing of the petition against Jeffrey. The victim testified that her first encounter with Jeffrey was in September 2004. The victim testified that Jeffrey and his friends called the victim and her friends various names, including "fat ass[es]," "fat penguins," "whores," and "fat bitch[es]." The victim testified that the name calling became a daily occurrence and that Jeffrey and his friends called the victim and her friends "fat ass[es]" approximately 75 to 100 times, "whores" approximately 25 times, "fat penguins" approximately 25 times, and "fat bitch[es]" approximately 10 times. The victim specifically testified that Jeffrey's tone of voice was "mean but not really — like, a threatening voice" and that it "was more kind of for his joy . . . his pleasure."

The victim testified that in addition to the name calling, there were other incidents between Jeffrey and the victim. The victim testified about two different occasions when a chair was kicked toward her and struck her feet, although she did not trip or fall on either occasion. The victim testified that with respect to the first chair incident, she told Jeffrey that the action "was not funny" and slapped Jeffrey in the back of the head after the incident. The victim testified that with respect to the second chair incident, she was not sure that Jeffrey was the one who kicked the chair toward her. Additionally, the victim testified that on three or four occasions, Jeffrey and his friends threw food, such as candy, potato chips, or French fries, at the victim and her friends. Finally, the victim testified about an incident wherein somebody placed some meat in her backpack and she witnessed Jeffrey and his friends laughing, although she was not able to identify who placed the meat in her backpack.

The victim testified that the incidents involving Jeffrey had emotionally impacted her in a negative way. She testified that to avoid Jeffrey, she changed her routine at school, such as the lunch table she used and the route she followed around school.

The State also presented testimony from an assistant principal at the school. The assistant principal testified that the victim had made several complaints about Jeffrey. The assistant principal testified, however, that he had received no other complaints about Jeffrey from other female students, although he testified that he had received some complaints from male students about Jeffrey's bullying, harassing students, name calling, and committing vandalism. The assistant principal testified that Jeffrey had been suspended from the school and enrolled in an alternative school because of Jeffrey's repeated "harassment and bullying." The assistant principal also testified about an Internet page on which Jeffrey had acknowledged being considered a bully at school, although Jeffrey had told the assistant principal that the page was only a joke.

The record presented on appeal does not contain any motion to quash filed on behalf of Jeffrey, but at the beginning of the adjudication hearing, Jeffrey moved the court to withdraw a motion to quash. The court granted the motion. At the conclusion of the adjudication hearing, Jeffrey's counsel argued that application of the criminal stalking statute amounted to criminalizing Jeffrey's speech and was an unconstitutional violation of Jeffrey's free speech rights. Additionally, Jeffrey argued that the State had failed to prove that Jeffrey intended to injure, terrify, threaten, or intimidate the victim.

On August 15, 2005, the juvenile court entered an order adjudicating Jeffrey to be within the jurisdiction of the juvenile court. The court found that the allegations that Jeffrey had violated the criminal stalking statute had been proven beyond a reasonable doubt. This appeal followed.

### III. ASSIGNMENTS OF ERROR

Jeffrey has assigned three errors on appeal. First, Jeffrey asserts that the court erred in not finding that § 28-311.03 was unconstitutional. Second, Jeffrey asserts that the court erred in not finding that application of § 28-311.03 to the facts of his case constituted an unconstitutional infringement of Jeffrey's free speech rights. Third, Jeffrey asserts that the court erred in finding that sufficient evidence was presented to support adjudication.

## IV. ANALYSIS

### 1. Constitutional Issues

Jeffrey's first two assignments of error challenge the constitutionality of § 28-311.03: first, by asserting that the statute is both vague and an overbroad restriction of speech based on content and, second, by asserting that the statute is unconstitutional as applied to Jeffrey. This court is without authority to rule on the constitutionality of statutes, and accordingly, we are without authority to rule on the merits of Jeffrey's assertions in his first two assignments of error.

This court cannot determine the constitutionality of a statute, yet when necessary to a decision in the case before us, we do have jurisdiction to determine whether a constitutional question has been properly raised. *Olson v. Olson*, 13 Neb. App. 365, 693 N.W.2d 572 (2005). To properly raise a challenge to the constitutionality of a statute, a litigant is required to strictly comply with Neb. Ct. R. of Prac. 9E (rev. 2006) (we note 2006 revisions to rule 9 did not alter rule 9E) and to properly raise and preserve the issue before the trial court. See, *Olson v. Olson, supra* (requiring strict compliance with rule 9E); *State v. McKee*, 253 Neb. 100, 568 N.W.2d 559 (1997) (requiring raising and preserving issue before trial court). See, also, *State v. Schreck*, 226 Neb. 172, 409 N.W.2d 624 (1987) (failure to properly raise constitutionality issue in trial court results in waiver of issue).

The Nebraska Supreme Court insists upon strict compliance with rule 9E before it will consider a constitutional challenge. *Olson v. Olson, supra.* Rule 9E requires that a party presenting a case involving the federal or state constitutionality of a statute must file and serve a separate written notice thereof with the Supreme Court Clerk at the time of filing such party's brief. Additionally, if a statute is alleged to be unconstitutional, the Attorney General must be served with a copy of the proceeding. Neb. Rev. Stat. § 25-21,159 (Cum. Supp. 2004). The record before us demonstrates that Jeffrey properly and timely filed a separate written notice that a constitutional question was being raised, and also properly and timely served notice of the proceeding on the Attorney General.

As for Jeffrey's facial challenge to the overbreadth and vagueness of § 28-311.03, under Nebraska law, a motion to quash

or a demurrer is the proper procedural method for challenging the facial validity of a statute. *State v. McKee, supra.* In the instant case, Jeffrey specifically withdrew his motion to quash prior to the commencement of the adjudication hearing. As a result, Jeffrey failed to properly preserve the facial validity of the statute.

Challenges to the constitutionality of a statute as applied to the defendant are properly preserved by a plea of not guilty. *Id.* In the instant case, the record does not contain Jeffrey's denial of the allegations of the State's petition, but it is apparent that Jeffrey did deny the allegations, inasmuch as an adjudication hearing was held and evidence was adduced to prove the allegations. Additionally, a review of the closing arguments indicates that the constitutionality of § 28-311.03 was specifically argued to the district court. Nonetheless, even if the issue was properly raised, this court is without authority to offer any relief on Jeffrey's constitutional challenge.

## 2. SUFFICIENCY OF EVIDENCE

Jeffrey also asserts that the juvenile court erred in finding that sufficient evidence was presented to demonstrate that Jeffrey violated § 28-311.03. Specifically, Jeffrey challenges the sufficiency of the evidence to demonstrate that Jeffrey had the requisite intent to violate the statute. We find that the State failed to adduce sufficient evidence to support a finding that Jeffrey violated § 28-311.03.

The standard of review for juvenile proceedings involving an adjudication is de novo on the record, and an appellate court is required to reach conclusions independent of the trial court's findings. See *In re Interest of Kyle O., ante* p. 61, 703 N.W.2d 909 (2005). The findings of fact made by the juvenile court will be accorded great weight because it heard and observed the witnesses and can better judge their credibility. See, *In re Interest of K.L.C. and K.C.*, 227 Neb. 76, 416 N.W.2d 18 (1987); *In re Interest of Anthony P.*, 13 Neb. App. 659, 698 N.W.2d 457 (2005). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Anthony P., supra.*

When the sufficiency of the evidence as to criminal intent is in issue, a direct expression of intention by the defendant is not required; the intent with which an act is committed involves a

mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. *State v. Peterson*, 236 Neb. 450, 462 N.W.2d 423 (1990). The requisite state of mind is a question of fact and may be proved by circumstantial evidence. *Id.*

Penal statutes are to be strictly construed against the government and are to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004); *In re Interest of Anthony P., supra.* In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Green Tree Fin. Servicing v. Sutton*, 264 Neb. 533, 650 N.W.2d 228 (2002); *In re Interest of Anthony P., supra.* No person shall be punished for an offense which is not made penal by the plain import of the words, upon pretense that he has offended against the spirit of the written law. *In re Interest of Anthony P., supra.* See *State v. Douglas*, 222 Neb. 833, 388 N.W.2d 801 (1986).

With these principles in mind, we turn to the relevant statutory provisions. Section 28-311.03 defines the offense of stalking as willfully harassing another person "with the intent to injure, terrify, threaten, or intimidate." Neb. Rev. Stat. § 28-311.02 (Cum. Supp. 2004) defines the term "harass" as engaging "in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Further, the Legislature specified in § 28-311.02(1):

> It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or in-timidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.

As noted, § 28-311.03 requires harassment "with the intent" to injure, terrify, threaten, or intimidate another person. Jeffrey

asserts on appeal that the State failed to adduce sufficient evidence of his intent in order to demonstrate a violation of § 28-311.03. The State did not adduce any direct expression of intent by Jeffrey. Thus, the question becomes whether there was sufficient evidence to support the juvenile court's factual determination that the circumstantial evidence demonstrated this requisite state of mind.

There is no evidence in the record which would support a finding that Jeffrey intended to injure, terrify, or threaten the victim. The victim herself testified that Jeffrey's tone of voice was not threatening, and she did not testify that she was ever injured or threatened by any of Jeffrey's conduct. The record in this case does not present an issue of credibility; there was no conflicting evidence, and the victim's testimony was that Jeffrey was not threatening. The victim even testified that on one occasion, after Jeffrey pushed a chair toward her foot in the cafeteria, her reaction was to slap Jeffrey in the back of the head. The juvenile court specifically held that Jeffrey "has engaged in a course of conduct, a pattern and practice calculated to intimidate [the victim] herein, daily, verbal put-downs, denigrating statements to her *causing himself amusement*." (Emphasis supplied.) The court noted that there was no "legitimate purpose" for Jeffrey's conduct. Although we do not disagree that there appears to be no "legitimate purpose" for Jeffrey's conduct and that his conduct was "excessive, uncalled for," we do not find that it rises to the level of demonstrating a criminal intent to intimidate the victim.

Rather, the record indicates that Jeffrey called the victim names, threw food at her, and on at least one occasion pushed a chair toward her, all for his own juvenile amusement. The victim herself testified that Jeffrey's tone of voice was such that he appeared to be engaging in this conduct "for his joy . . . his pleas - ure." There was no evidence presented to suggest that Jeffrey intended criminal intimidation of the victim. Although Jeffrey's actions in this case cannot be condoned or approved of, on our de novo review, we find the evidence insufficient to support the adjudication, and we reverse the decision of the juvenile court.

## V. CONCLUSION

We are without jurisdiction to address Jeffrey's constitutional challenges to § 28-311.03. Nonetheless, we find that the State

adduced insufficient evidence to support the adjudication, and we reverse the decision of the juvenile court.

REVERSED.

CARLSON, Judge, dissenting.

The majority concludes that the record fails to show that Jeffrey intended to intimidate the victim, given that Jeffrey called the victim names, threw food at her, and on at least one occasion pushed a chair toward her for his own juvenile amusement. I disagree. The fact that Jeffrey found his behavior amusing does not justify the conclusion that Jeffrey did not intend to intimidate the victim. Rather, Jeffrey's words and actions, the extensive nature of Jeffrey's conduct, and the victim's reactions to Jeffrey's behavior all clearly show that Jeffrey intended to intimidate the victim.

At trial, the victim testified that on multiple occasions, Jeffrey yelled at her and her friends in front of other students at school. Specifically, the victim stated that in a mean voice, Jeffrey called her and her friends "fat ass[es]" approximately 75 to 100 times, "whores" and "fat penguins" approximately 25 times each, and "fat bitch[es]" approximately 10 times. The victim testified that Jeffrey appeared to engage in this behavior for his own joy and pleasure. Additionally, the victim testified that Jeffrey pushed a chair out in front of her in order to trip her and that Jeffrey threw food at her in the cafeteria, hitting her on 9 or 10 occasions. The evidence shows that these incidents occurred in a 3-month time period—September, October, and November 2004.

The victim also testified that given Jeffrey's repeated actions, she and her friends sat at a different table in the cafeteria, in addition to completely changing their paths inside school "[t]o get away from all of it. So it would make less chance of him embarrassing us in front of everybody." The victim further testified that Jeffrey's behaviors had impacted her quite negatively, "[e]motionally, very badly," and that she felt "very put-down."

After reviewing these facts, the juvenile court held that Jeffrey intended to intimidate the victim, specifically finding that Jeffrey had "engaged in a course of conduct, a pattern and practice calculated to intimidate [the victim] herein, daily, verbal put-downs, denigrating statements to her *causing himself amusement.*" (Emphasis supplied.) As the majority notes, Jeffrey's state of mind is a question of fact and may be proved by circumstantial

evidence. See *State v. Peterson*, 236 Neb. 450, 462 N.W.2d 423 (1990).

On this record, I cannot say that the trial court's finding that Jeffrey intended to intimidate the victim was erroneous. Under the law, we are required to give great weight to the trial court's factual findings, given that the trial court heard and observed the witnesses. See *In re Interest of Anthony P.*, 13 Neb. App. 659, 698 N.W.2d 457 (2005). Therefore, I would affirm Jeffrey's adjudication, finding that the State adduced sufficient evidence to find Jeffrey guilty of stalking under Neb. Rev. Stat. § 28-311.03 (Cum. Supp. 2004).