IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. CALDWELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL A. CALDWELL, APPELLANT.

Filed January 9, 2018.    No. A-17-386.

Appeal from the District Court for Sarpy County, GEORGE A. THOMPSON, Judge, on appeal thereto from the County Court for Sarpy County, ROBERT C. WESTER, Judge. Judgment of District Court affirmed.

Joseph Kuehl and Steve Lefler, of Lefler, Kuehl and Burns, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Following a bench trial in the county court for Sarpy County, Michael A. Caldwell was found guilty of disturbing the peace. Caldwell appeals the order of the district court for Sarpy County which affirmed his conviction and sentence. He asserts that his actions were protected by the constitutions of the United States and Nebraska and that the district court erred in affirming the order of the county court. For the reasons that follow, we affirm.

### BACKGROUND

On April 1, 2016, an amended criminal complaint was filed in the county court for Sarpy County, charging Caldwell with five criminal counts; one count for stalking, one count for second degree trespass, and three counts of disturbing the peace. The allegations in the complaint all

related to Caldwell's conduct toward and interactions with Jeffrey and Angela Mell, and his conduct on or near the Mells' residential property.

In 2014, the City of Bellevue moved a "No Parking" sign on Chaput Drive near the intersection with Bellevue Boulevard. Before the sign was moved, parking was prohibited for the approximately 50 feet before the intersection. After the sign was moved, street parking was allowed up to approximately 20 feet from the intersection.

The residence on the corner of Chaput Drive and Bellevue Boulevard is owned and inhabited by the Mell family. After the sign was moved, Caldwell became concerned that vehicles parked outside of the Mell residence caused a visual obstruction for traffic in the intersection. Caldwell lives approximately a quarter of a mile from the intersection and stated that from 2006 to the present, he passes the property, now owned by the Mells, between six and forty times per day.

In 2014, Caldwell began contacting the Bellevue Police Department, city zoning enforcement, code enforcement, traffic enforcement, and the city council in an attempt to require the Mells to park their vehicles further from the intersection. During this time period, Caldwell photographed the Mells' property and their vehicles, and had several personal confrontations with the Mells. Caldwell called the police to have the officers check the Mells' compliance with vehicle license and registration requirements, he sought to have their mailbox moved, and he sought a requirement for the Mells to put a sidewalk across their property.

In November 2014, Caldwell had a personal confrontation with the Mell family. He called police officers to the Mell residence to have them cited for improper parking. After Caldwell's complaints were investigated the responding officers suggested that the Mell family institute a "ban and bar" letter barring Caldwell from their property. The Mell family signed the "ban and bar" notice and Caldwell was served with the notice by Bellevue police officers. Caldwell continued to videotape and photograph the Mells and their property over the ensuing months. His conviction in this case, is based upon his conduct on May 31, 2015.

Prior to trial, "Count 1: Stalking" was dismissed by the State. A bench trial was held on April 4, 6, 7, and 18, 2016. Angela Mell, Caldwell, and Officer Greg Wiech, of the Bellevue Police Department, testified regarding the events of May 31, 2015. Angela testified that she pulled into her driveway, opened the back of her pickup truck and began to carry groceries into the house. She saw Caldwell standing in the street with a video recorder in hand as she went into the house. He was still there, with the camera when she returned to the pickup. She asked Caldwell to leave and he responded that he did not have to, because he was not breaking the law. Angela said Caldwell did a dance, like a jig, and she asked him to leave, for a second time. She stated that she would call 911 and he responded that she should go ahead and call, because he had already called 911 himself. Angela testified that Caldwell's conduct made her feel afraid because she was alone at her home. Angela said Caldwell had a history of driving by her home, but said that on May 31, Caldwell's presence felt "more personal" because he made the effort to walk to her home and stand there pointing the camera at her while she unloaded groceries.

Caldwell testified that on May 31, 2015, he was taking photographs of the neighborhood in an effort to contest an increase in tax valuations by documenting ways in which the neighborhood did not conform to code. He said he took two photographs of Angela speaking to the driver of a white pickup truck that was stopped on the street at the end of her driveway.

Caldwell stated that he may have taken as many as five additional photographs of the Mell property on that date, but he did not include Angela in those photographs. Caldwell did not discuss whether he captured any video recordings.

Caldwell testified that the driver of the white pickup truck called out to him, asking what he was doing, and that Angela told the driver "He does this all the time. He's not even supposed to be here. He's trespassing. We have a ban and bar." Caldwell testified that Angela requested Caldwell to "come over here," but that he replied, "Please don't talk to me." Caldwell testified that he remained in the public roadway and did not enter the Mell property during the exchange.

Wiech testified that on May 31, 2015, he was dispatched to the Mell residence on a possible ban and bar complaint. Wiech stated that the party who contacted the police was Caldwell. Wiech spoke to Angela, who was upset, and after speaking to Angela, he contacted Caldwell at his home. Caldwell spoke, at length, to Wiech about a "plethora of complaints"; improperly parked vehicles, construction vehicles parked in front of a private home, and the associated line-of-sight issues at the intersection by the Mell residence. Wiech testified that a ban and bar was in effect at the Mell residence on May 31. Caldwell told Wiech that he was aware of the ban and bar, but that he had not stepped onto the Mell property.

On June 15, 2016, the county court found Caldwell guilty of disturbing the peace on May 31, 2015. He was acquitted of the remaining charges. On August 18, 2016, Caldwell was sentenced to 15 months' probation with minimal restrictions and fined $50. Caldwell's probation primarily required him to follow all laws, refrain from contact with the Mell family, and stay more than 25 yards from their property line. Caldwell appealed his conviction to the district court.

The district court affirmed the judgment and sentence imposed by the county court. Caldwell appeals the order of the district court.

## ASSIGNMENTS OF ERROR

Caldwell asserts the trial court erred in finding him guilty of disturbing the peace, because his actions were constitutionally protected. He asserts the State failed to present sufficient evidence of his guilt and the district court erred in affirming the judgment. He also asserts the county court imposed an excessive sentence and the district court erred in affirming his sentence.

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Todd*, 296 Neb. 424, 894 N.W.2d 255 (2017). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016).

ANALYSIS

*Sufficiency of Evidence.*

Caldwell asserts that the evidence is insufficient to support his conviction for disturbing the peace, and the district court erred in affirming the trial court's findings. Neb. Rev. Stat. § 28-1322 (Reissue 2016) provides: "Any person who shall intentionally disturb the peace and quiet of any person, family, or neighborhood commits the offense of disturbing the peace." When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Gonzales, supra.*

Caldwell argues there is "very little evidence and/or testimony that relates the events that actually transpired on the date of May 31, 2015," and there is a "lack of credence that can be afforded the testimony of the alleged victim." Thus, he argues, the State did not meet its burden of proving its case beyond a reasonable doubt. Brief for appellant at 19. He argues that his actions were carried out for the legitimate purpose of documenting the Mell family's "violation of city, state, and federal rules and regulations concerning public safety." *Id.* at 20.

Angela testified that on May 31, 2015, she was unloading groceries from her truck, which was parked in her driveway. She testified that Caldwell trained his camera on her as she took multiple trips from her car into her home. Mell testified that, given her family's history with Caldwell, she felt afraid that he was approaching her on foot and pointing a camera at her while she was at home alone. Angela testified that she asked Caldwell to leave, and he refused. She told him that she intended to call the police and he told her that he had already done so, and he "danced a jig" stating that he did not have to leave because he was not breaking the law. This supports an inference that his behavior was intended to disturb Angela's peace.

Caldwell argues that on May 31, 2015, he was documenting the placement of street-parked vehicles from a respectful distance. However, the evidence shows that he was approaching Mell while she was engaged in a task that was unrelated to his grievance, and her car was not parked on the street in the area of his concern. Officer Wiech testified that Caldwell was aware of the "ban & bar" notice, which prohibited him from entering the Mell property, but Caldwell believed he was acting lawfully, as he had not entered the Mells' property.

An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The trial court determined that the evidence supported a conviction for disturbing the peace and this determination was affirmed by the district court. Viewing the evidence in the light most favorable to the prosecution, we find the record supports a finding that Caldwell intentionally breached Angela's peace on May 31, 2015.

*First Amendment.*

Caldwell argues on appeal that his conviction for disturbing the peace was contrary to the First Amendment. He asserts his actions were protected by the constitutions of the United States and Nebraska, and his actions were carried out for the legitimate purpose of documenting the

violations of city, state, and federal rules and regulations concerning public safety. We find no merit to this assertion.

On appeal to the district court, Caldwell argued that the State cannot constitutionally criminalize speech under § 28-1322 solely because it inflicts emotional injury, annoys, offends, or angers another person. See *State v. Drahota*, 280 Neb. 627, 788 N.W.2d 796 (2010). He argued that he had a legitimate purpose of seeking redress against the government, by addressing the victim's purported violations of city ordinances. Thus, he argued that the action of photographing the Mell family on and about their property was protected free speech. The State argued that Caldwell's actions were directed toward private citizens and not in protest to any government action. The district court agreed, stating that Caldwell's actions, including photographing, taunting, calling the police, and dancing, were directed toward a neighbor, and resulted in a disturbance of the peace of the neighbor and the neighborhood. The court found Caldwell's actions were not constitutionally protected.

The First Amendment provides, in relevant part, that "'Congress shall make no law . . . abridging the freedom of speech . . . .'" *State v. Drahota*, 280 Neb. at 632, 788 N.W.2d at 800-01, quoting U.S. Const. amend. I. The First Amendment limits the State's ability to prosecute certain criminal offenses. *State v. Drahota, supra.* The First Amendment protects wide swaths of speech, but its protections are not absolute. *State v. Drahota, supra.* Historically, the Supreme Court has held that the First Amendment does not apply to certain categories of speech, including libel, obscenity, incitements to imminent lawlessness, true threats, and fighting words. *State v. Drahota, supra.*

We conclude that Caldwell's conviction was not prohibited by the First Amendment. Unlike the conviction in *State v. Drahota*, Caldwell was not convicted on the basis of political speech addressed toward the government or a government official. Rather, the record in the present case makes it clear that the county court based its conclusion on Caldwell's conduct that was directed toward his neighbor, a private individual, on May 31, 2015. Caldwell was served with a "ban and bar" notice and the Mell family posted "no trespassing signs" in their yard prior to the incident. Caldwell's right to express his disagreement with the city's enforcement of parking regulations does not extend to photographing, taunting, following, calling the police, and dancing at the property line of an individual who has expressed her desire to be left alone.

The Nebraska Supreme Court has specifically recognized that a conviction based on conduct that accompanies what might otherwise be protected speech is permissible. *State v. McKee*, 253 Neb. 100, 568 N.W.2d 559 (1997). Thus we find the district court did not err in finding that Caldwell's actions were not constitutionally protected.

*Excessive Sentence.*

Caldwell asserts the sentence imposed was excessive. He was convicted for disturbing the peace, a Class III misdemeanor, as defined by § 28-1322. Class III misdemeanors are punishable by up to three months' imprisonment, a $500 fine, or both. See § 28-106 (Reissue 2016). When a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life. Neb. Rev. Stat. § 29-2262 (Reissue 2016). When a court has sentenced an offender to probation, the court shall specify a term of such probation which shall be not more than 5 years upon conviction of a felony

- 5 -

or second offense misdemeanor and 2 years upon conviction of a first offense misdemeanor. Neb. Rev. Stat. § 29-2263 (Reissue 2016). Caldwell's sentence of 15 months' probation and fine of $50 fall within the statutory limits.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). The sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of the sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Caldwell argues that the court failed to consider the proper factors to impose a fair and appropriate sentence. He argues:

> With respect to the Appellant, he is approximately 41 years old; he is highly educated; he is a war veteran who sustained a closed brain injury while serving in the Persian [G]ulf; he is married, and has 2 children; he has been diagnosed with Asperger's, a form of autism; he has no prior criminal convictions, other than for minor traffic infractions; as it can be evidenced by the record, he abides by the law, as he frequently contacts the authorities with any issues he may have, and never takes matter into his own hands, aside from taking notes, and documenting, as was his motivation for his conduct on the date of the alleged offense; the nature of this offense is arguably benign, as no violence was involved in the Defendant's conduct.

Brief for appellant at 21.

Caldwell argues, "Leaving the appellant on probation, and 'under the thumb' of the alleged victim will create further litigation." *Id*. He argues that the court abused its discretion and imposed an excessive and onerous sentence upon him, and the district court could have, and should have, reduced his sentence to a fine.

The record shows the county court received a presentence investigation report and considered the history of the conflict between Caldwell and the Mell family. There is ample evidence that the police department investigated Caldwell's numerous reports of code and law violations at the Mell property, and Caldwell continued to personally document and record the happenings on and around the Mells' property. Caldwell was found guilty of disturbing the peace of Angela Mell and the county court did not err in tailoring Caldwell's probation term to require that he refrain from communicating with the Mell family and remain 25 yards from their property.

The record does not indicate that the county court considered any inappropriate factors in determining the sentence to be imposed. As a result, Caldwell cannot show the county court abused its discretion, or that the district court erred in affirming the sentence imposed by the county court. Placing Caldwell on probation does not put him "under the thumb" of the Mell family, and further litigation will only result if he fails to abide by the terms of his probation by continuing to engage

in the type of contact with the Mell family which led to this criminal case. This assignment of error is without merit.

## CONCLUSION

Upon our review, we find the district court did not err in affirming the conviction and sentence imposed by the county court for Sarpy County.

AFFIRMED.