IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF COLTON S.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF COLTON S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

COLTON S., APPELLANT.


Filed October 29, 2024.    No. A-24-116.


Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Deanna Hobbs for appellant.

Patrick F. Condon, Lancaster County Attorney, and Aynsley G. Davis for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

The separate juvenile court of Lancaster County adjudicated Colton S. for disturbing the peace and criminal mischief ($0-500). Colton appeals, alleging there was insufficient evidence to prove that he committed the offenses. Based on the reasons that follow, we affirm the adjudication.

## BACKGROUND

The State filed a petition in juvenile court alleging that Colton was a juvenile within Neb. Rev. Stat. § 43-247(1) (Reissue 2016). The petition alleged that he intentionally disturbed the peace of Mark Granquist, in violation of Neb. Rev. Stat. § 28-1322 (Reissue 2016), and that he intentionally or maliciously or recklessly damaged the property of Granquist causing pecuniary

loss less than $500, in violation of Neb. Rev. Stat. § 28-519 (Reissue 2016). Colton entered a denial to the allegations in the petition and the case proceeded to an adjudication hearing.

At the adjudication hearing, the State presented evidence of an altercation that occurred between Colton, Colton's father Nick S., and Granquist on August 5, 2023. Colton and Nick lived next door to Granquist. Colton was 14 years old at the time of the altercation.

Granquist testified that on August 5, 2023, he was on his way home, driving south on the street he lives on, when he saw Colton riding his motorcycle on the street, as he had seen him do many times since Colton and his family moved in next door a month prior. Colton was traveling the opposite direction of Granquist at a high rate of speed. Granquist testified that after Colton passed by him, Colton turned his motorcycle around and started driving the same direction as Granquist. As Colton approached from behind, Granquist drove his vehicle to the left side of the road, partially to give Colton room to zip past him on the right, and partially so he could see if there was oncoming traffic because the road curves. As Colton approached Granquist from behind, he drove on the right side of Granquist's car, flipped him off, kicked his front fender, and continued to his house. Granquist denied trying to run Colton off the road.

Granquist testified that when he arrived home, Colton and Nick came "charging" across his front yard and confronted him in his driveway. Nick got close to his face, standing almost nose to nose, and started yelling at him. Colton and Nick claimed he tried to run Colton off the road. Granquist testified that the only thing he said was that Colton should not be riding his motorcycle on the street. At the time, Colton was behind Nick jumping around and was highly agitated. While still standing face to face with Granquist, Nick knocked off Granquist's baseball cap. Granquist testified that at that point, Colton grabbed Granquist's glasses off his face, twisted them, and threw them into the street. On redirect, Granquist again stated that Colton broke his glasses. Granquist also testified that during the interaction with Colton his peace was disturbed.

After the altercation, Granquist went inside his home and called the police. When he came back outside, he picked up the pieces of his glasses. He stated that one of the arms was broken, one of the lenses was shattered, and the other lens was in pieces in the street. He had to have his glasses replaced, which cost him $50 out of pocket.

Granquist testified that prior to August 5, 2023, he had seen Colton riding the motorcycle on numerous occasions up and down the street they both live on. Granquist was concerned about the safety of the neighborhood children, as well as Colton's safety. He testified that he had called the police "probably at least ten times" in the past month regarding Colton riding the motorcycle, but Colton continued to ride it.

Lincoln Police Officer Sarah Castaneda was the officer who responded to Granquist's call to the police on August 5, 2023. When she arrived at the scene, she spoke with Granquist, who was upset and flustered when she was talking with him. Granquist told her he had been assaulted during an altercation with Colton and Nick regarding Colton riding his motorcycle on the street. Castaneda testified that Granquist was holding his broken glasses in his hand. Granquist told her that Colton pulled his eyeglasses off his face, snapped them in half, and threw them in the street. She documented the eyeglasses as damaged property and took a photo of the eyeglasses which was received into evidence. Granquist did not report any injury, any threats to him or his family, or any offensive or obscene language.

After she spoke with Granquist, Castaneda spoke with Colton and Nick. Colton reported that prior to the altercation, he was riding his motorcycle on the street and Granquist was driving his vehicle and tried to run Colton off the road. Colton told Castaneda he subsequently went over to Granquist's driveway and confronted Granquist about trying to run him off the road which resulted in a heated altercation. Castaneda testified that Colton and Nick both admitted that Nick flipped Granquist's hat off his head during the altercation. They both stated that they did not know anything about Granquist's glasses and they seemed surprised when Castaneda asked about the glasses.

Nick was called as a witness by Colton to testify about the events of August 5, 2023. Nick testified that on August 5 Colton had been riding his motorcycle. When he came home, he parked it in the driveway and started running toward Granquist's house. Nick followed him. Granquist was in his driveway and Colton got in his face and kept asking him why he tried to run him off the road. Nick testified that he then got in Granquist's face because he wanted to protect Colton. Nick and Granquist exchanged words and Nick tipped Granquist's hat off his head. Nick stated that Granquist was raising his voice and was upset about Colton riding the motorcycle. The interaction ended when Nick and Colton walked away.

Nick testified that Colton did not do anything to damage Granquist's glasses. He further testified that he was confused when the police asked him about Granquist's glasses because he never saw Granquist wearing glasses.

Colton testified he has been contacted by the police nine or ten times about riding his motorcycle in the neighborhood but has not been told to stop riding it or received a citation.

Colton testified that on the day of the altercation, he was driving his motorcycle one direction and Granquist was driving his vehicle the opposite direction. When they met, Granquist did not give him any space to pass and Colton had to drive up onto the curb. Colton believed Granquist was trying to hit him. Colton testified that he subsequently approached Granquist because he felt like Granquist had threatened his life and he was scared. Colton testified that while he was talking to Granquist, his dad pushed him aside and Nick and Granquist ended up arguing face to face. While Nick and Granquist were arguing, Nick flipped his hat off. Colton testified that he did not touch Granquist and did not damage his glasses. Colton testified that Granquist was not wearing glasses at the time of the altercation.

Following the hearing, the juvenile court found the State met its burden of proof as to both alleged counts in the petition. The juvenile court entered an order of adjudication, finding Colton was a child described under § 43-247(1) on proof beyond a reasonable doubt.

## ASSIGNMENT OF ERROR

Colton assigns that the juvenile court erred in failing to find that the evidence presented was insufficient to support an order of adjudication under § 43-247(1).

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Quiotis C.*, 32 Neb. App. 932, 9 N.W.3d 224 (2024). When the evidence is in conflict, however, an appellate court may give weight

to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Disturbing the Peace.*

Colton first argues that the evidence was insufficient to prove beyond a reasonable doubt that he intentionally disturbed the peace of Granquist. When an adjudication is based upon § 43-247(1), as is the case here, the allegations must be proved beyond a reasonable doubt. See *In re Interest of Elainna R.*, 298 Neb. 436, 904 N.W.2d 689 (2017).

The petition for adjudication first alleged that Colton committed the offense of disturbing the peace. Section 28-1322(1) provides that "[a]ny person who shall intentionally disturb the peace and quiet of any person . . . commits the offense of disturbing the peace." The plain language of § 28-1322 does not require proof that Colton intended to disturb the peace of others; it requires only that his intentional acts resulted in disturbing the peace of others. See *State v. Thomas*, 25 Neb. App. 256, 904 N.W.2d 295 (2017). Accordingly, the question is whether a rational fact finder could find that Colton's intentional actions disturbed Granquist's peace.

Colton argues that the words he expressed to Granquist were protected by the free speech clause of the First Amendment and, therefore, cannot amount to a disturbing the peace offense. The First Amendment limits the State's ability to prosecute certain criminal offenses. *State v. Drahota*, 280 Neb. 627, 788 N.W.2d 796 (2010). The First Amendment protects wide swaths of speech, but its protections are not absolute. *State v. Drahota, supra*. Historically, the Supreme Court has held that the First Amendment does not apply to certain categories of speech, including libel, obscenity, incitements to imminent lawlessness, true threats, and fighting words. *State v. Drahota, supra*.

Colton contends that based on the evidence, there was no indication that his speech fell into any of the categories of speech that are not protected by the First Amendment. However, he admits Granquist did not testify about anything specific Colton said to him. He states that the only evidence of what he said to Granquist was Nick's testimony that Colton asked Granquist why he was trying to run him off the road. Without evidence of what Colton said to Granquist, there is no way to know whether his speech was protected by the First Amendment.

However, we determine that regardless of what Colton said to Granquist, there is sufficient evidence to support a finding that Colton committed the offense of disturbing the peace. As the Nebraska Supreme Court specifically recognized in *State v. McKee*, 253 Neb. 100, 568 N.W.2d 559 (1997), a conviction based on the conduct that accompanies what might otherwise be protected speech is permissible. There was evidence that Colton's behavior and/or conduct disturbed the peace of Granquist.

The altercation started when Colton "charged" onto Granquist's property to confront him. Granquist was standing in his own driveway when he was approached by Colton. Granquist testified that Colton was jumping around and appeared highly agitated, and that Colton and Nick verbally abused him. He also testified that Colton grabbed his glasses off his face, twisted them, and threw them into the street. Granquist testified his peace was disturbed during the interaction with Colton. He subsequently called the police and reported he had been verbally assaulted. Castaneda testified that when she spoke with Granquist he was upset and flustered.

Nick testified that he saw Colton run toward Granquist's house after riding his motorcycle and Nick followed him. He stated that Colton got in Granquist's face and kept asking Granquist why he tried to run him off the road.

Colton also testified that he approached Granquist because he believed Granquist had purposely run him off the road and that was the only reason he went over to Granquist's driveway. Again, Granquist was standing in his own driveway when the altercation occurred.

We conclude the evidence was sufficient to prove beyond a reasonable doubt that Colton intentionally disturbed the peace of Granquist.

*Criminal Mischief ($0-$500).*

Colton next argues that the evidence was insufficient to prove beyond a reasonable doubt that he intentionally or maliciously or recklessly damaged the property of Granquist, specifically his glasses, resulting in pecuniary loss less than $500. A person commits criminal mischief if he or she damages property of another intentionally or recklessly. § 28-519(1)(a). Criminal mischief is a Class III misdemeanor "if the actor intentionally, maliciously, or recklessly causes pecuniary loss in an amount of less than five hundred dollars, or if his or her action results in no pecuniary loss." § 28-519(5).

Granquist testified that Colton grabbed his glasses off his face and broke them. He stated that when he retrieved the glasses, one of the arms was broken, one of the lenses was shattered, and the other lens was in pieces in the street. Granquist had to have his glasses replaced, which cost him $50. Castaneda also testified that Granquist showed her his broken glasses when she arrived at his residence and he told her that Colton had broken them. The photo Castaneda took of the broken glasses was also received into evidence.

Colton and Nick provided conflicting testimony to that provided by Granquist and Castaneda, specifically that Colton did not damage Granquist's glasses and that Granquist was not wearing glasses at the time of the incident.

The standard of review for juvenile cases is de novo on the record; however, when evidence is in conflict, this court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. See *In re Interest of Quiotis C.*, 32 Neb. App. 932, 9 N.W.3d 224 (2024). Here, the juvenile court apparently found Granquist's and Castaneda's testimony regarding the glasses more credible than Colton's or Nick's testimony. We give weight to the court's observations and determinations, as the court observed the witnesses and heard their testimony, and when viewed in this light, the evidence is sufficient to prove Colton's guilt of criminal mischief, less than $500, beyond a reasonable doubt.

## CONCLUSION

Upon our de novo review, we find the evidence adduced sufficiently supports the juvenile court's adjudication under § 43-247(1).

AFFIRMED.

- 5 -