STATE OF NEBRASKA, APPELLEE, V.
WILLIAM WHITE, APPELLANT.
722 N.W.2d 343

Filed October 6, 2006.   No. S-05-1028.

Clarence E. Mock and Matthew M. Munderloh, of Johnson & Mock, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

William White appeals his convictions in the district court for Phelps County on eight counts of theft by unlawful taking or disposition. White was charged with the theft of grain which was being stored by farmers at a warehouse owned by White. On appeal, White asserts that his convictions should be set aside because the evidence presented at trial was insufficient to prove that the grain at issue was the "property of another" as defined by statute and that the evidence was insufficient to prove that he had the intent to deprive the farmers of their grain. We affirm White's convictions.

## STATEMENT OF FACTS

White was the president and owner of Atlanta Elevator, Inc. (AEI), a public grain warehouse located in Atlanta, Nebraska. On March 11, 2002, warehouse examiners from the Nebraska Public Service Commission (PSC) inspected AEI and determined that the quantities of grain actually in storage with AEI were significantly below the amount necessary to cover AEI's apparent storage obligations. As a result of the inspection, AEI voluntarily surrendered its grain warehouse license and the PSC took control of the facilities and assumed title to all grain in storage at the warehouse for the benefit of the owners, depositors, and storers of the grain. There ensued certain claims to the grain. The PSC denied various claims, and we affirmed certain denials after the claimants appealed. *In re Claims Against Atlanta Elev., Inc.*, 268 Neb. 598, 685 N.W.2d 477 (2004).

The State brought criminal charges against White in connection with events surrounding the insolvency of AEI. These charges gave rise to the instant criminal case. On February 23, 2004, the State filed an information charging White with nine counts of theft by unlawful taking or disposition in violation of Neb. Rev. Stat. § 28-511 (Reissue 1995). Each count alleged that the property involved had a value over $1,500, making each count a Class III felony under Neb. Rev. Stat. § 28-518(1) (Reissue 1995). One of the nine counts was dismissed on the State's motion at trial. The eight remaining counts involved corn and soybeans owned by several farmers. It was alleged in each count that White had unlawfully exercised control over movable property of another with the intent to deprive him thereof, causing monetary loss in excess of $1,500.

At the trial held June 13 through 16, 2005, the State presented evidence intended to prove that each farmer had exclusive ownership of a quantity of corn or soybeans he had deposited. The evidence included a showing that each of the farmers had filed claims with the PSC asserting that he had grain in an "open storage" arrangement with AEI as of March 11, 2002. Pursuant to an "open storage" arrangement, the farmers deposited grain with the warehouse for storage for an agreed-upon fee but retained title and ownership to the grain. Certain of the farmers also testified that they had received scale tickets evidencing their ownership. At trial, White claimed that AEI had "price later" contracts with the farmers which entitled them to the proceeds of the sale of corn or soybeans rather than an ownership of grain. Pursuant to a "price later" contract, title and ownership of grain held in open storage is transferred to the warehouse. Although AEI records indicated that the farmers had "price later" contracts for the grain at issue, none of the price later contracts in AEI's files were signed. Each of the farmers testified at trial that he had an open storage arrangement, that he retained ownership of the grain, and that either he never received a price later contract or he received such contract but never signed it. Each farmer admitted on cross-examination that he had not requested a warehouse receipt from AEI relating to the grain.

The evidence shows that the farmers delivered their grain to AEI in September and October 2001. AEI records showed that

from September 2001 through February 2002, AEI issued significant quantities of collateral warehouse receipts pursuant to which a purchaser advanced 90 percent of the price to AEI and AEI became obligated to ship the grain at a later date. The amount of grain for which AEI issued warehouse receipts exceeded the amount shown by AEI records to be in inventory. A federal warehouse examiner conducted an examination on February 20, and following the examination, the examiner informed White of the shortages. It was during this period, in early 2002, that AEI sent the price later contracts to the farmers in this case. Changing the status of the farmers' grain from open storage to price later, if successful, would allow AEI to reflect the grain as being owned by AEI rather than by the farmers. When the PSC took control of AEI's warehouse in March, AEI records purported to show that the farmers' grain was being held under price later contracts.

Following trial, on July 13, 2005, the district court found White guilty of eight counts of theft. On August 18, the court sentenced White to imprisonment for 6 to 10 years on each count with the sentences to be served concurrently. White appeals his convictions.

## ASSIGNMENTS OF ERROR

White generally asserts that there was not sufficient evidence to support his convictions. He specifically asserts that the evidence indicated that he was "privileged to infringe" upon the grain of each farmer and that therefore, the grain was not the "property of another" as those expressions are used in Neb. Rev. Stat. § 28-509 (Reissue 1995) and § 28-511. White also asserts that there was not sufficient evidence to establish that he had the intent to deprive the farmers of their grain.

## STANDARD OF REVIEW

■ Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the

finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Mason*, 271 Neb. 16, 709 N.W.2d 638 (2006).

## ANALYSIS

White makes the general assertion that the evidence was insufficient to support his convictions, and he argues that the evidence was insufficient in two specific respects, which we discuss separately.

*Evidence Was Sufficient to Support Finding That Grain Was "Property of Another."*

White first argues that the evidence was not sufficient to support a finding that the grain at issue was the "property of another" as required to find him guilty of theft under § 28-511. We conclude that there was sufficient evidence for the district court to find that grain was being held by AEI for the farmers under open storage arrangements and that therefore, the grain was the property of the farmers.

Section 28-511(1) provides that one is "guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." In § 28-509(6), "[p]roperty of another" is defined in part as "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property."

At trial in this case, all the farmers testified that they had grain stored at AEI in an open storage arrangement pursuant to which the farmers retained title and ownership of the quantity of grain they had deposited. The farmers all testified that they had never signed price later contracts that would have transferred title to AEI. For completeness, we note that some of the farmers testified that they had received scale tickets when they delivered the grain and that an employee of AEI testified that part of the routine when receiving grain for open storage was to issue scale tickets. In this regard, we note that pursuant to Neb. Rev. Stat. § 88-535 (Reissue 1999), a scale ticket is "prima facie evidence of the holder's claim of title to the goods described in such ticket."

White argues that he cannot be guilty of theft of the grain because the grain was not the "property of another." White asserts that the grain was under price later contracts pursuant to which he was "privileged to infringe" on the interests of the farmers. Although there was evidence that White prepared and sent price later contracts to the farmers, the contracts were not signed by the farmers. Such grain contracts must be signed by all parties pursuant to the PSC's grain warehouse rules and regulations. See 291 Neb. Admin. Code, ch. 8, § 002.07E6 (1994) (now found at § 002.07H6).

We need not determine whether White would have been "privileged to infringe" on the farmers' interests under price later contracts, because the evidence was sufficient for the district court as finder of fact to have believed the farmers' testimony and other evidence. The court found that the grain was delivered to AEI pursuant to open storage arrangements and that the farmers never agreed to change the arrangements to price later contracts. Under their open storage arrangements, the farmers retained title and ownership and White was not privileged to infringe on their ownership interests by disposing of the grain without their permission. Therefore, there was sufficient evidence from which the district court could have found that the grain was the "property of another," and we reject White's argument to the contrary.

*Evidence Was Sufficient to Support Finding That White Had Intent to Deprive Another of Property.*

White next argues that the evidence was not sufficient to support a finding that he had the intent to deprive the farmers of their grain as required for a finding of guilt under § 28-511. We conclude that there was sufficient circumstantial evidence for the district court to find that White intentionally disposed of the grain in such a way as to create a substantial risk that the farmers would not recover the quantity of grain to which they were entitled and that therefore, White had the required intent to deprive the farmers of their property.

Under § 28-511(1), theft requires "the intent to deprive" another of property. Under § 28-509(1)(b), one of the definitions of "deprive" is "[t]o dispose of the property of another so as to create a substantial risk that the owner will not recover it in the condition it was in when the actor obtained it."

■ When the sufficiency of the evidence as to criminal intent is questioned, independent evidence of specific intent is not required. Rather, the intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006). There was evidence in the present case from which the district court could have inferred that White intentionally disposed of the grain in such a way as to create a substantial risk that the farmers would not recover the quantity of grain to which they were entitled, and such intent would support a finding of guilt.

Documentary evidence and testimony indicated that after the farmers delivered their grain to AEI, AEI sold the grain and incurred commitments to deliver grain in amounts that exceeded what it had available, causing AEI to be out of position. At the time AEI was out of position, in a flurry of activity, AEI prepared and sent price later contracts to the farmers and also changed its records to purportedly show that such grain was held under price later contracts rather than in open storage. The effect of changing the classification of the farmers' grain was to make AEI records appear to show that the grain was owned by AEI rather than the farmers. Testimony indicated that such actions of AEI were taken at the direction and under the control of White. White's dealings with regard to the grain at a time when AEI was out of position created a substantial risk that the farmers would not recover the quantity of grain to which they were entitled. The court could infer from White's actions that he intentionally took such actions knowing that they would create such substantial risk.

White argues that the evidence is not sufficient to establish that he had the intent to permanently deprive the farmers of the grain. He argues instead that the evidence showed that he knew what was owed to each farmer and that he thought he would be able to rectify AEI's problems and make the proper quantity of grain available to the farmers. However, the statutory definition of "deprive" noted above does not necessarily require that one intend to permanently deprive another of his or her property; instead, it is sufficient if one intentionally creates a substantial risk that the other person will not recover the property in its

original condition. The evidence in this case was sufficient for the court to find that White intentionally created a substantial risk that the farmers would not recover their proper quantity of deposited grain, thus depriving the farmers of their property. We therefore reject White's argument.

### CONCLUSION

We conclude that the evidence in this case was sufficient for the court to find that the grain was the "property of another" and that White had the "intent to deprive" the farmers of the quantity of grain to which they were entitled. The evidence was sufficient to support the convictions for theft. We therefore reject White's assignments of error and affirm his convictions.

AFFIRMED.

HENDRY, C.J., not participating.