IN RE INTEREST OF JEFFREY K., A
CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. JEFFREY K., APPELLANT.
728 N.W.2d 606

Filed March 16, 2007.   No. S-05-1033.

Thomas C. Riley, Douglas County Public Defender, and David J. Tarrell for appellant.

Stuart J. Dornan, Douglas County Attorney, Amy Schuchman, and Kris Morgan and Stacy Jo Ferrel, Senior Certified Law Students, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

In this delinquency proceeding brought under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Reissue 2004), the separate juvenile court of Douglas County found that Jeffrey K. had committed the criminal misdemeanor offense of stalking as set forth in Neb. Rev. Stat. §§ 28-311.02(2)(a) and 28-311.03 (Cum. Supp. 2004) and adjudicated Jeffrey under § 43-247(1). Jeffrey appealed the adjudication order. The Nebraska Court of Appeals determined that there was not sufficient evidence to support a finding that Jeffrey had violated Nebraska's stalking statutes and reversed. *In re Interest of Jeffrey K.*, 14 Neb. App. 818, 717 N.W.2d 499 (2006). The State petitioned for further review. We granted the State's petition. Because we determine that the evidence was sufficient to support the adjudication, we reverse the decision of the Court of Appeals and remand the cause with directions to affirm the juvenile court's adjudication order.

## STATEMENT OF FACTS

On April 15, 2005, the State filed a petition in the separate juvenile court of Douglas County alleging that Jeffrey, born July 20, 1988, was within the meaning of § 43-247(1), which provides generally that the juvenile court has jurisdiction over any juvenile who has committed a misdemeanor under the laws of this state. Specifically, the petition alleged that from September through November 4, 2004, Jeffrey willfully stalked a fellow student at Omaha Westside High School, with the intent to injure, terrify, threaten, or intimidate her, in violation of § 28-311.03.

An adjudication hearing was held on August 12, 2005, at which hearing the court received testimony from the victim. The victim

generally testified that beginning in September 2004, Jeffrey had carried out a continuing pattern of calling her names at school, such as "fat ass," "fat penguin," "whore," and "fat bitch." The victim testified that initially, Jeffrey's name-calling did not occur on a daily basis, but, rather, it would occur "maybe a couple of times a week." She further testified, however, that beginning in late October, the frequency of the name-calling incidences increased, and Jeffrey began to do it "on a daily basis when [she] came into school or when [she] just passed [him] in the hallway." She testified that his tone of voice was "kind of mean."

When asked to estimate how many times Jeffrey called her names, the victim testified that he called her "fat ass" between 75 to 100 times. She estimated that he called her "whore" and "fat penguin" approximately 25 times each, and she stated that he called her "fat bitch" approximately 10 times. All of the name-calling happened during school, in front of other students.

The victim testified that beginning in the late fall of 2004, Jeffrey began to engage in conduct that went beyond name-calling. Specifically, the victim testified concerning one incident when Jeffrey kicked a chair at her as she was walking in the lunchroom. The chair hit the victim, causing her to stumble. The victim also testified that on several occasions, Jeffrey threw food at her, yelling on at least one occasion "[e]at some more, fat ass . . . ." The victim testified that she was struck by the food approximately 9 or 10 times.

The victim stated that because of Jeffrey's conduct, she moved to a different area of the lunchroom. She also stated that she "changed [her path] completely so that [she] wouldn't be anywhere near" Jeffrey. When asked how Jeffrey's actions affected her, she testified "[q]uite negatively. [She felt e]motionally very badly. [She felt] very put-down quite a bit."

Following the hearing, the juvenile court found that the charges against Jeffrey were true on proof beyond a reasonable doubt. On August 15, 2005, the juvenile court entered an order adjudicating Jeffrey as a child within the meaning of § 43-247(1) and set the matter for disposition. Jeffrey appealed the juvenile court's adjudication order to the Court of Appeals, claiming, in part, that there was not sufficient evidence to support the adjudication.

In a divided decision, the Court of Appeals determined that the evidence did not support the juvenile court's finding that Jeffrey was "stalking" the victim, as that term was used in Nebraska's stalking statutes. The majority determined that Jeffrey's conduct did not demonstrate stalking, but, rather, that the conduct was carried out for Jeffrey's "own juvenile amusement." *In re Interest of Jeffrey K.*, 14 Neb. App. 818, 825, 717 N.W.2d 499, 506 (2006). The Court of Appeals reversed the decision of the juvenile court. One judge dissented and stated that the "fact that Jeffrey found his behavior amusing does not justify the conclusion that Jeffrey did not intend to intimidate the victim." *Id.* at 826, 717 N.W.2d at 506 (Carlson, Judge, dissenting).

The State petitioned for further review from the Court of Appeals' decision. We granted the petition.

## ASSIGNMENT OF ERROR

The State claims that the Court of Appeals erroneously determined that there was insufficient evidence to support a finding that Jeffrey violated § 28-311.03 and, therefore, erred in reversing the order of adjudication.

## STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the lower courts' findings. See *In re Interest of Brandon M.*, ante p. 47, 727 N.W.2d 230 (2007).

## ANALYSIS

On further review, the State claims that the Court of Appeals erroneously determined that there was insufficient evidence to support a finding that Jeffrey had violated § 28-311.03 and, therefore, erred in reversing the order of adjudication entered by the juvenile court. We find merit in the State's argument. As explained below, we determine that the Court of Appeals erred in its construction of Nebraska's stalking statutes and in its corresponding assessment of the significance of the record. We further determine that given the record, which we review de novo, there was sufficient evidence to support a finding that Jeffrey had violated the stalking statute, § 28-311.03, and that therefore, the juvenile court did not err in adjudicating Jeffrey as a child within

the meaning of § 43-247(1). Accordingly, we reverse the decision of the Court of Appeals and remand the cause with directions to affirm the decision of the juvenile court, which adjudicated Jeffrey as a child under § 43-247(1).

■ When an adjudication is based upon § 43-247(1), the allegations must be proved beyond a reasonable doubt. § 43-279(2). *In re Interest of Kyle O.*, 14 Neb. App. 61, 703 N.W.2d 909 (2005). The State sought to adjudicate Jeffrey on the basis that Jeffrey had committed the misdemeanor offense of stalking as defined in § 28-311.03. Section 28-311.03 provides: "Any person who willfully harasses another person with the intent to injure, terrify, threaten, or intimidate commits the offense of stalking." Section 28-311.02(2)(a) defines "harass" as "engag[ing] in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose."

■ We have not previously construed the provisions of the stalking statutes. In considering these provisions, we apply familiar principles. When interpreting statutes, statutory language is to be given its plain and ordinary meaning. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Although penal statutes are strictly construed, they are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. See *State v. Rabourn*, 269 Neb. 499, 693 N.W.2d 291 (2005).

The Legislature has stated its intent with respect to the stalking statutes as follows:

> (1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.

§ 28-311.02(1).

■ Initially, we note that Nebraska's stalking statutes focus both on the behavior of the perpetrator, see §§ 28-311.02(2)(a) and 28-311.03, and on the experience of the victim, see

§ 28-311.02(2)(a). With respect to the perpetrator's conduct, § 28-311.03 provides that the acts complained of must be done "willfully." Moreover, § 28-311.02(2)(a) defines "harass" as the perpetrator's "engag[ing] in a knowing and willful course of conduct directed at a specific person." There is no real dispute on appeal that Jeffrey's actions were intentional, and we therefore determine on appeal that the record supports the determination that Jeffrey acted "willfully" and that his conduct was directed at a specific person as required under the statutes.

In addition to requiring that the perpetrator's actions be intentional, § 28-311.03 requires that the perpetrator intend to either "injure, terrify, threaten, or intimidate" the victim. In reversing the juvenile court's adjudication order in this case, the Court of Appeals determined that there was "no evidence in the record which would support a finding that Jeffrey intended to injure, terrify, or threaten the victim." *In re Interest of Jeffrey K.*, 14 Neb. App. 818, 825, 717 N.W.2d 499, 505 (2006). We do not agree. Contrary to the observation of the Court of Appeals, the cumulative effect of Jeffrey's words and actions, and the extensive, ongoing, and escalating nature of his conduct described above clearly show that Jeffrey intended to intimidate the victim in this case. Further, although a perpetrator's state of mind is a question of fact, such fact may be proved by circumstantial evidence. See *State v. White*, 272 Neb. 421, 722 N.W.2d 343 (2006). Given the evidence, which we have reviewed de novo, we determine that the State did adduce sufficient evidence from which the juvenile court could properly find beyond a reasonable doubt that Jeffrey intended to intimidate the victim.

As noted, the stalking statutes focus on both the perpetrator's conduct, which we have discussed above, as well as the victim's experience in response to the perpetrator's conduct. In order to constitute stalking, § 28-311.02(2)(a) requires that the perpetrator's conduct be such that it "seriously terrifies, threatens, or intimidates" the person at whom it is directed. In examining this statutory requirement, the Court of Appeals assumed this provision was a subjective standard, and because the victim testified at one point that Jeffrey's tone of voice was "mean but not really — like, a threatening voice," the Court of Appeals concluded that the evidence was insufficient to support a finding that Jeffrey

had committed a violation of § 28-311.03. As explained below, the Court of Appeals erred when it construed § 28-311.02(2)(a) as a subjective rather than objective requirement, and because a reasonable person confronted by Jeffrey's conduct would feel intimidated, we conclude that there is evidence beyond a reasonable doubt that Jeffrey's conduct satisfied the requirements of Nebraska's stalking statutes, as the juvenile court found. The conclusion of the Court of Appeals to the contrary was in error.

■ In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Rieger*, 270 Neb. 904, 708 N.W.2d 630 (2006). It is apparent from the announced intent of the statute, to "protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated," § 28-311.02(1), that the Legislature was not concerned with the subjective response of a victim but was instead concerned with intentional conduct by which a reasonable person would be harmed. Giving the entire statute a sensible construction, we conclude that the Legislature intended to "protect victims" and that to achieve this purpose, the language "seriously terrifies, threatens, or intimidates" ought to be applied objectively and that the evidence should therefore be assessed on the basis of what a reasonable person under the circumstances would experience.

■ In determining that Nebraska's stalking statutes must be construed objectively when considering the experience of the victim, we are aware that the language of the stalking statutes in other states differs from that of Nebraska and that some states apply a subjective standard, such that under these statutes, it must be shown that the victim was actually placed in fear by the perpetrator's actions. See 2 Wayne R. LaFave, Substantive Criminal Law § 16.4(d) and n.110 (2d ed. 2003). Nevertheless, given the language of Nebraska's stalking statutes and the purpose announced by the Legislature for enacting the statutes, we conclude that an objective construction is appropriate and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. Compare *U.S. v. Smith*, 973 F.2d 603, 604 (8th Cir. 1992) (stating, in appeal involving crime of bank robbery, that "[i]ntimidation is conduct 'reasonably

calculated to put another in fear,'" and "[u]nder this test 'the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute an intimidation to an ordinary, reasonable person,'" quoting *U.S. v. Higdon*, 832 F.2d 312 (5th Cir. 1987)).

Viewing Jeffrey's actions by an objective standard, it is readily apparent that a reasonable person would be seriously intimidated by Jeffrey's conduct. As previously noted, the record reflects that from the period of September through November 4, 2004, Jeffrey yelled at his victim close to 200 times, in front of her friends and other students at school. Moreover, he threw food at her and shoved a chair directly in the victim's path, causing the chair to hit her. A reasonable person could be expected to alter his or her course to avoid such intimidation. We are required to review the record de novo, see *In re Interest of Brandon M., ante* p. 47, 727 N.W.2d 230 (2007), and based upon our review, we determine that the record contains evidence beyond a reasonable doubt demonstrating that a reasonable person would be "seriously . . . intimidated" by Jeffrey's ongoing verbal and physical attacks as required under § 28-311.02(2)(a).

The juvenile court correctly found the allegations of stalking in the petition to be true beyond a reasonable doubt and adjudicated Jeffrey a child as defined by § 43-247(1). The Court of Appeals erred in reversing the adjudication. Accordingly, we reverse the decision of the Court of Appeals and remand the cause with directions to affirm the decision of the juvenile court.

## CONCLUSION

Based upon our de novo review of the record, we determine that Jeffrey's conduct in this case violated Nebraska's stalking statute, § 28-311.03, and that the juvenile court did not err in adjudicating Jeffrey as a child within the meaning of § 43-247(1). The reversal by the Court of Appeals of the adjudication was error. We reverse the decision of the Court of Appeals and remand the cause with directions to affirm the decision of the juvenile court adjudicating Jeffrey as a juvenile as defined by § 43-247(1).

REVERSED AND REMANDED WITH DIRECTIONS.