IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HANSHAW V. EARLS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ALISHA HANSHAW, APPELLEE,

V.

CHARLES ANTHONY EARLS, APPELLANT.


Filed April 28, 2015.    No. A-14-993.


Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Reversed and remanded with directions.

Justin R. Herrmann, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., and, on brief, Nicholas R. Norton for appellant.

No appearance for appellee.


MOORE, Chief Judge, and IRWIN and RIEDMANN, Judges.

MOORE, Chief Judge.

On August 19, 2014, Alisha Hanshaw filed a petition and affidavit for a harassment protection order against her workplace supervisor, Charles Anthony Earls, in the district court for Buffalo County. Following the district court's entry of an ex parte harassment protection order, Earls requested a show cause hearing. The district court held a hearing on September 3, 2014, and filed a subsequent order in which it found that the harassment protection order should remain in effect for 1 year. Thereafter, Earls filed a motion for reconsideration which was overruled. Earls appeals. We determine there is insufficient evidence to support the issuance of the harassment protection order and reverse the district court's order.

- 1 -

FACTUAL BACKGROUND

On August 19, 2014, Hanshaw filed a form petition and affidavit for a harassment protection order against Earls pursuant to Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2014). At the time Hanshaw filed the petition, Earls was employed by the University of Nebraska at Kearney as the Associate Dean of Students and Director of Residence Life and had hired Hanshaw earlier in the year to serve as the Associate Director in Residence Life. In her position, Hanshaw reported directly to Earls and had an office which was located next to Earls' office.

In her petition for a harassment protection order, Hanshaw listed a series of three acts of harassment Earls had allegedly made toward her. She alleged that on July 25, 2014, she was in a conference room with a coworker when Earls came up from behind, put his hands on her shoulders, pulled her body toward his, and kissed her right ear. Hanshaw further stated that this contact was not wanted or warranted. Hanshaw alleged that a second event occurred during the week of August 4, 2014. She described having been in a coworker's office when Earls again came up behind her, rubbed his hands up her back, and squeezed her shoulders. Earls' touching caused Hanshaw to jump and squeal before she grabbed a can of compressed air and sprayed it into Earls' face. Finally, Hanshaw alleged the third event occurred on August 14, 2014, after she had reported Earls' earlier inappropriate actions to other supervisors. Hanshaw stated that she was sitting on a campus bench when Earls came up from behind, sat next to her, and repeatedly asked where Hanshaw was going. Earls insisted that he accompany Hanshaw to her next destination and followed her to the human resources office. During their walk to the human resources office, Hanshaw did not participate in a conversation with Earls and attempted to walk away from him. According to Hanshaw, Earls loudly told her twice to quit walking away from him.

On August 21, 2014, the district court entered an ex parte harassment protection order. Five days later, Earls filed a request for hearing. An evidentiary hearing was held on September 3, 2014. At the hearing, the district court directed Earls to present his evidence first and Earls complied without objection. Both Earls and Hanshaw provided testimony related to Hanshaw's allegations.

Earls admitted that he put his hands on Hanshaw's shoulders and kissed her right ear on July 25, 2014. In providing context for this interaction, Earls stated that Hanshaw and another department employee, Robert Zabowski, had undertaken the responsibility for preparing an extensive staff training curriculum after another employee had failed to perform any work on the project despite having represented that the project had been progressing. Hanshaw and Zabowski assumed responsibility for this curriculum "at the last minute" and impressively completed this project within a month. Earls reported this curriculum was normally a project that required 7 or 8 months of work. In assessing Hanshaw's performance on this project, Earls testified that he was very pleased with the end product and proud of Hanshaw. Earls repeatedly described his mood as "giddy". He also testified that he kissed Hanshaw on the ear without thinking and then walked out of the room. Earls denied that he intended to attain sexual gratification from the kiss and later became "disappointed" when he learned that his actions caused Hanshaw to react the opposite from how he had originally intended.

Hanshaw's version of this event largely matched Earls' testimony. However, Hanshaw also added that after Earls kissed her he remarked, "I'd offer a kiss to [Zabowski], but he doesn't want

a kiss from a guy." Following Earls' kiss, Hanshaw felt "violated, disrespected, belittled, [and] hurt" and she attempted to avoid any further contact with Earls.

Earls had little recollection of the alleged incident that occurred on August 4, 2014. He recalled that Hanshaw had a startled reaction and sprayed something that was in her hands. After Hanshaw sprayed the substance, Earls remembered that everyone laughed. Earls did not recall Hanshaw spraying anything into his face and did not perceive Hanshaw taking any offense to his actions.

Hanshaw had a more vivid memory of the August 4 incident. She testified that Earls came up behind her and put his hands on her back and shoulders. She described Earls putting his hands on the upper part of the small of her back and then running his hands up her back. Caught off guard, Hanshaw jumped, squealed, and grabbed the closest thing to her: a can of air. Hanshaw testified that she pointed the can at Earls and shot it in his face. Hanshaw described feeling "disgusting" and "violated" following this second incident.

After the incident on August 4, Hanshaw met with Earls to discuss how Earls' kiss had affected her. Hanshaw testified that Earls admitted to remembering the incident and he stated that he remembered "not having done it well". Hanshaw interpreted Earls' statement to signify that he had intended to kiss her and had been hoping to get more out of the kiss than he did. Earls had a different view of their meeting and he testified that he and Hanshaw had resolved any issues between them during their meeting.

Hanshaw reported Earls' actions to the university's human resources department on August 12 and an investigation was opened. Both Hanshaw and Earls agreed that Earls was not aware of Hanshaw's reporting when Earls came up to Hanshaw while she was sitting on a campus bench on August 14. The parties also agreed that they engaged in a brief conversation regarding the staff training before walking together toward the human resources office. Hanshaw was going to an appointment in the office to discuss her allegations against Earls while Earls was going into the office to turn in a curriculum notebook. During their walk to the human resources office, Hanshaw and Earls' conversation turned contentious and Earls told Hanshaw not to walk away from him. When Hanshaw continued to walk away, Earls realized that the conversation would not be productive and did not pursue it further. Following this conversation, Earls sent Hanshaw an email in which he expressed concern about tension between them, praised Hanshaw for her hard work, and offered to talk with Hanshaw about the situation in whatever manner she was comfortable.

Finally, Hanshaw testified that Earls' actions had affected her everyday life. She disclosed that she was on anti-anxiety medicine to control her paranoia and has attended counseling. Additionally, Hanshaw has become afraid of running into Earls in public places and has her husband pick up their children from daycare because Earls' children also attend the same daycare. She requested the court grant her the protection order.

In addition to the parties' testimony, LeAnn Clausen, another assistant director within the Residence Life department, testified in support of Hanshaw. Clausen reported that Hanshaw came into her office immediately after Earls kissed her. She observed Hanshaw was visibly upset, to the point of trembling and shaking. Following that initial conversation, Clausen discussed the incident with Hanshaw on several other occasions. Along with serving as a confidante for Hanshaw,

Clausen also testified that she actively tried to keep Earls from having any further contact with Hanshaw.

At the time of the show cause hearing, Earls was on paid administrative leave as required by university procedure. However, the university had not taken any adverse action against Earls during the pendency of the investigation. Although Earls asserts in his brief that his employment with the university has since been terminated, such information was not contained in the record and we do not consider it. A party's brief may not expand the evidentiary record. *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Id*.

Following the evidentiary hearing, the district court filed its order on September 9, 2014, in which it continued the harassment protection order for the statutory period of 1 year. In continuing the order, the court stated that it found "the conduct of [Earls] occurred knowingly and willfully, that it was directed at [Hanshaw], and that [Earls'] conduct seriously terrified or intimidated [Hanshaw]."

On September 15, Earls filed a motion styled as a "motion to reconsider, alter, or amend or, in the alternative, for new trial". Earls' motion argued that the district court applied an erroneous subjective standard, rather than the objective "reasonable person" standard, to determine whether his conduct terrified or intimidated Hanshaw. Earls also stated that the evidence demonstrated that he never had the intent to terrify or intimidate Hanshaw. The district court overruled the motion following a hearing.

Earls appeals.

## ASSIGNMENTS OF ERROR

Summarized, Earls assigns error to the district court's determination that sufficient evidence had been adduced at the show cause hearing to sustain the issuance of the harassment protection order for 1 year.

## STANDARD OF REVIEW

A protection order is analogous to an injunction. *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id*.

## ANALYSIS

*Procedure at Show Cause Hearing*.

As an initial matter, we note that a petitioner who files for a harassment protection order has the burden to establish by a preponderance of the evidence the truth of the facts supporting a protection order. See *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). An ex parte order does not relieve the petitioner of this burden. See *id*. The contested factual hearing in protection order proceedings is a show cause hearing, in which the fact issues before the court are whether the facts stated in the sworn application are true. *Id*. At the same time, we also recognize

that the procedures at a show cause hearing might be less elaborate than those commonly used at civil trials. See *Richards v. McClure*, *supra*; *Mahmood v. Mahmud*, *supra*.

Because it is the petitioner's burden to establish the facts supporting the protection order, it follows that the petitioner is the party to first present its evidence at the show cause hearing. That procedure was not followed in this case as the court directed Earls to present his evidence prior to Hanshaw. There is nothing further in the record to support the court's reasoning for its procedure.

We acknowledge that Earls did not object to this sequence at the hearing and does not separately argue this issue in his brief on appeal. Nonetheless, we take this opportunity to remind the lower courts that because the petitioner has the burden to establish facts necessary to support a protection order, the petitioner should be the party to first produce evidence.

*Sufficiency of Evidence*.

The central question presented in this case is whether Earls' conduct reached the level where a reasonable victim would be seriously terrified, threatened, or intimidated. Earls contends that his conduct did not reach such a level. Upon our de novo review, we conclude there is not sufficient evidence in the record to support the issuance of a harassment protection order.

A harassment protection order is proper when a person has "engage[d] in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2008); *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). A course of conduct is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person." § 28-311.02(2)(b). The Legislature has stated that the purpose for a harassment protection order is to "protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities." § 28-311.02(1).

This court has summarized the application of the law governing harassment protection orders as follows:

> Nebraska's stalking and harassment statutes are given an objective construction and . . . the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable [victim] would be seriously terrified, threatened, or intimidated by the perpetrator's conduct.

*Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013). In a recently decided case, the Nebraska Supreme Court reaffirmed the objective construction of this state's stalking and harassment statutes. See *Richards v. McClure*, *supra*.

Our review of the record shows that Earls twice initiated inappropriate physical contact with Hanshaw while he was her supervisor within the Residence Life department. First, Earls kissed Hanshaw when he was "giddy" about Hanshaw's work on the curriculum project. Then,

Earls put his hands on the small of Hanshaw's back and her shoulders while she was in another employee's office. After each of these incidents, Hanshaw described feeling violated and disgusted. She further testified that she had to take anti-anxiety medicine and has attended counseling sessions because of Earls' conduct. Hanshaw's third allegation against Earls was not related to inappropriate touching, but rather related to her attempts to avoid any further contact with Earls as a result of the first two incidents.

Although Earls' physical contact with Hanshaw was clearly not appropriate in the workplace, we cannot conclude those two incidents reached a level that would amount to harassment under the statute. Hanshaw's testimony demonstrates that she was repulsed by Earls' workplace conduct, but there is no evidence that she was seriously terrified, threatened, or intimidated by that conduct. Further, Hanshaw's third allegation does not rise to the level of harassment. The record demonstrates that Earls simply attempted to have a conversation with Hanshaw, a subordinate employee, while he was unaware of any allegations against him. Hanshaw may have some viable claim against Earls because of his conduct, but we conclude that a harassment protection order is not her proper remedy.

## CONCLUSION

Because there was insufficient evidence to support the protection order, we reverse, and direct the district court to vacate the harassment protection order on remand.

REVERSED AND REMANDED WITH DIRECTIONS.