IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

WHITAKER V. WHITAKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFFREY WHITAKER, APPELLEE,

V.

GREGORY WHITAKER, APPELLANT.

Filed February 13, 2018.    No. A-17-582.

Appeal from the District Court for Hall County: TERESA K. LUTHER, Judge. Affirmed.

On brief, Kevin K. Knake, Johnson Law Office, L.L.C., for appellant.

Marvin L. Andersen, Bradley Law Office, P.C., for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Gregory Whitaker appeals the entry of a harassment protection order entered by the district court for Hall County in favor of his brother, Jeffrey Whitaker. Because we find that the evidence was sufficient to support entry of the harassment protection order, we affirm.

### BACKGROUND

On April 27, 2017, Jeffrey filed a form petition and affidavit to obtain a harassment protection order against Gregory pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2016). Jeffrey requested relief not only for himself, but also for his wife and daughter. In his affidavit in support of the petition, Jeffrey made the following statements: He and Gregory are brothers. Their father died in November 2016 and Jeffrey is the personal representative of the estate. Gregory had been living in his father's home with him until the father moved into a nursing home about a year before he died. Gregory continued living in the father's home after the father moved out and continued to

- 1 -

live at the residence after the father died. The will of the father provides that the residence and the surrounding farm land should be sold and the proceeds distributed between Jeffrey, Gregory and their sister. As personal representative, Jeffrey had offered to sell Gregory the residence but he refused. Jeffrey decided his only option was to forcibly remove Gregory from the property and had him served with a notice to quit and filed a complaint for forcible entry and detainer. At the time of Jeffrey's affidavit, a trial on that action was scheduled for May 5, 2017.

The affidavit further stated Gregory's behavior has always been erratic and abusive and this behavior has greatly escalated following Jeffrey's efforts to remove him from their father's residence. He stated that the erratic behavior was evidenced by text messages he had received on April 13 and 20, 2017, copies of which were attached to the affidavit. Jeffrey stated that the following statement in the April 13 text message was threatening to him and his family: "you and your cunt wife just made the biggest fuckup of your hypocrit [sic] lives[,] hells coming and iam [sic] coming with . . . leagaly [sic] or illeagally [sic] I don't care were gonna [sic] settle up."

On May 1, 2017, the district court entered an ex parte harassment protection order in favor of Jeffrey. Gregory filed a request for a show cause hearing. At the hearing, Jeffrey testified that Gregory had been harassing him through text messages and phone calls. Exhibit 1 was entered into evidence which consisted of the two text messages Jeffrey referred to in his affidavit in support of his petition to obtain a protection order. The text message Jeffrey received from Gregory on April 13 included the following: "You cop calling phony fucking prick you want a war I'll give you one . . . face me bitch see how you fare on that[,] you and your cunt wife just made the biggest fuckup on your hypocrit [sic] lives[,] hells coming and iam [sic] coming with . . . leagaly [sic] or illeagally [sic] I don't care were gonna [sic] settle up."

The April 20 text states:

You must have bumped your head to hire that cunt for an attorney[.] I hired an attorney that will be getting a hold of you very soon[.] I've also had this place surveyed and split into thirds and appraiser will be here this afternoon[.] [S]orry to disappoint you but iam [sic] farming this at least this year so grow up big shot and deal with it[.]

Jeffrey testified that when he received the text message on April 13, 2017, he was concerned and worried and he felt threatened. He also testified that he believed Gregory was capable of carrying out such a threat. He also testified that the April 13 and 20 texts were consistent with other conversations he had with Gregory. He testified that text conversations with Gregory would sometimes start out being constructive but would escalate into threats and bullying tactics.

Jeffrey testified that Gregory's behavior over the past year or so "kind of ebbs and flows from relatively calm behavior . . . to when he becomes agitated. Then he is prone to outbursts and threats of violence." Jeffrey also testified that Gregory has always been a highly volatile person, with violent outbursts and a temper. He testified that Gregory's behavior has escalated in the past 6 months to a year, following Jeffrey's efforts to remove him from their father's residence. His opinion was based on the threatening texts he had received. He also testified that he believed Gregory could be violent and he feared violence on the part of Gregory.

On cross-examination, Jeffrey was asked what specific language in the texts was threatening. He testified that the threatening language included Gregory's statement that he was

going to give Jeffrey a war, along with the statement "leagaly [sic] or illeagally [sic] I don't care were gonna [sic] settle up."

On redirect examination, Jeffrey testified that additional language in the April 13 text was threatening, specifically: "face me bitch see how you fare on that;" "you and your cunt wife just made the biggest fuckup of your hypocrite lives[,] hells coming and iam [sic] coming with."

Jeffrey testified that his petition asked for a protection order for himself, as well as for his wife and daughter. He stated that he did so because his wife was mentioned in the text message and he started to "have concern for [his] daughter." He testified that he did not want Gregory to have any contact with his family.

At the end of Jeffrey's testimony, exhibit 2, the petition and affidavit to obtain harassment protection order filed by Jeffrey, was entered into evidence over Gregory's objection. The court also allowed exhibit 3, a search warrant for the property where Gregory resided, into evidence over Gregory's objection. The accompanying affidavit for search warrant was not admitted into evidence. The search warrant was referenced in and attached to Jeffrey's affidavit.

Following the hearing, the trial court entered an order affirming the harassment protection order issued on May 1, 2017, making it effective for 1 year.

## ASSIGNMENTS OF ERROR

Restated, Gregory assigns that the trial court erred in (1) admitting exhibit 2, Jeffrey's affidavit in support of the harassment protection order, and exhibit 3, a search warrant for the property where Gregory was residing, into evidence, (2) finding there was sufficient evidence to justify the issuance of a harassment protection order, and (3) entering the harassment protection order on the basis of Jeffrey's concern regarding his wife and daughter.

## STANDARD OF REVIEW

A protection order is analogous to an injunction. *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.*

## ANALYSIS

*Admission of Exhibits 2 and 3.*

Gregory first assigns that the trial court erred in admitting exhibits 2 and 3 into evidence. We first address the admission of exhibit 2, the petition and affidavit to obtain harassment protection order. Gregory argued at the hearing that exhibit 2 should not be admitted into evidence because it was irrelevant and contained hearsay statements. At a show cause hearing in protection order proceedings, a prima facie case may be established by a form petition and affidavit, which has been properly admitted into evidence. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). The petition and affidavit are routinely admitted into evidence when offered. In fact, this court has reminded parties of the importance of formally offering into evidence the petition and affidavit filed in a protection order case. See, e.g., *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

The petition and affidavit were clearly relevant, as the show cause hearing was based on the allegations contained within them. In regard to hearsay, Jeffrey was the one who filed the

petition and the affidavit was his own. He was competent to testify to the contents of exhibit 2. Even if exhibit 2 did contain hearsay, any error committed by the trial court in admitting the statements into evidence was harmless. Jeffrey testified at the show cause hearing concerning the threatening behavior by Gregory. This testimony was direct evidence of the allegations contained in the petition and affidavit. Jeffrey was also present for cross-examination. Accordingly, even if the trial court erred in admitting into evidence any hearsay statements contained in exhibit 2, such error was cured through Jeffrey's testimony. Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007). We find no error in the court's decision to admit exhibit 2 into evidence.

In regard to exhibit 3, the search warrant, even if we assume without deciding that it should not have been admitted into evidence, there was sufficient evidence without it to conclude that the harassment protection order should be extended for 1 year. Accordingly, any error in its admission was harmless error. Gregory's first assignment of error is without merit.

*Sufficiency of Evidence.*

Gregory next assigns that the evidence was insufficient to justify the issuance of a harassment protection order. The harassment protection order in this case was entered on the basis of § 28-311.09, the purpose and terms of which are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2016). Section 28-311.02 provides in relevant part:

(1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.

(2) For purposes of sections 28-311.02 to 28-311.05, 28-311.09, and 28-311.10:

(a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose.

In analyzing § 28-311.02, the Nebraska Supreme Court has concluded that Nebraska's stalking and harassment statutes are given an objective construction and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id.*

Jeffrey testified that he felt threatened by Gregory's conduct. He testified that the threatening language in the April 13 text message included Gregory's statement that he was going to give Jeffrey a war, along with the statement "leagaly [sic] or illeagally [sic] I don't care were gonna [sic] settle up." Jeffrey also testified that the following language was threatening: "face me bitch see how you fare on that;" "you and your cunt wife just made the biggest fuckup of your hypocrite lives[,] hells coming and iam [sic] coming with." Gregory's statements in his text

- 4 -

messages threatened and intimidated Jeffrey while serving no "legitimate purpose," as described in § 28-311.02(2)(a).

Jeffrey testified that the April 13 and 20 text messages were consistent with other text conversations that he had with Gregory. He stated that conversations would sometimes start out constructive and then escalate into threats and bullying tactics.

Jeffrey also testified that Gregory's behavior over the past year or so "kind of ebbs and flows from relatively calm behavior . . . to when he becomes agitated. Then he is prone to outbursts and threats of violence." He further testified that Gregory has always been a highly volatile person, with violent outbursts and a temper. Gregory's behavior had escalated following Jeffrey's efforts to remove him from their father's residence. Jeffrey also believed that Gregory could be violent and he feared violence on the part of Gregory.

We conclude that a reasonable person would be seriously terrified, threatened, or intimidated by Gregory's conduct. We note that Gregory's conduct, which is of concern in this case, is not confined to just two text messages. Rather, those messages were the culmination of conduct which transpired over several months and included threats and intimidation throughout. Accordingly, the evidence was sufficient to justify the issuance of a harassment protection order against Gregory and in favor of Jeffrey, and the district court did not err in extending the protection order for 1 year.

Gregory also assigns that the trial court erred in entering the harassment protection order on the basis of Jeffrey's concern regarding his wife and daughter. He claims there was no evidence showing that either of them was directly involved or aware of the text messages. However, there is no indication that the court granted the protection order based on Jeffrey's testimony that he did not want Gregory having any contact with his family. Further, the harassment protection order was only entered in favor of Jeffrey, not his wife or daughter. Accordingly, this assignment of error is without merit.

## CONCLUSION

After our de novo review, we find the evidence was sufficient to support entry of the harassment protection order.

AFFIRMED.