IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

HRUSKA V. HELLBUSCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOANN HRUSKA, APPELLEE,

V.

TABITHA HELLBUSCH, APPELLANT.

Filed July 16, 2024.    No. A-23-832.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Reversed and remanded with directions.

Michael C. Pettis for appellant.

Tosha Rae D. Heavican, of Hightower Reff Law, for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

MOORE, Judge.

### INTRODUCTION

Tabitha Hellbusch appeals from a harassment protection order entered by the district court for Douglas County extending the ex parte harassment order entered against Hellbusch for the protection of Joann Hruska, Hruska's husband, and two of Hellbusch's children, until September 11, 2024. Hellbusch argues that there was insufficient evidence to support issuance of the protection order. We agree, and reverse and remand with directions to vacate the harassment protection order.

### STATEMENT OF FACTS

On September 11, 2023, Hruska filed a "Petition and Affidavit to Obtain Harassment Protection Order" pursuant to Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2022) against Hellbusch,

- 1 -

Hruska's sister. This petition was also made on behalf of Hruska's husband and Hellbusch's two youngest children, ages 4 and 7 at the time, who are in a guardianship with Hruska.

Included in the affidavit is a timeline of Hellbusch's actions as alleged by Hruska. In April 2021, Hellbusch poured gasoline over her home while her children were asleep and said that "God told her to do it." As a result, Hellbusch was criminally charged. Hellbusch's bond terms allegedly included that she was not to have any direct or indirect contact with her minor children. In January 2023, Hellbusch text messaged Hruska about potential birthday gifts for her 4-year-old child in Hruska's care. The child's father later delivered to Hruska the gifts mentioned by Hellbusch. In August 2023, Hellbusch text messaged Hruska about a court case and asked for Hruska to "please pray for His will to be done." Hruska also indicated in her affidavit that Hellbusch sent numerous text messages to their siblings in August 2023. Attached to Hruska's affidavit are screenshots of three text messages. The screenshots do not indicate the date the particular message was received.

On the same day as the petition was filed, the court entered an ex parte harassment protection order. On September 15, 2023, Hellbusch filed a request for a hearing.

An evidentiary hearing on the petition was held on October 10, 2023. Hruska and Hellbusch each testified during the hearing. Three exhibits were received into evidence, including a September 2023 call report from the Waterloo Police Department, an April 2023 order from Hellbusch's criminal case, and a copy of Hruska's petition and affidavit.

Hruska testified that on the evening of April 16, 2021, she received several phone calls from Hellbusch's boyfriend, the father of Hellbusch's two youngest children. When she returned the phone call, the boyfriend answered and told Hruska that he had awoken to the smell of gasoline; Hellbusch had poured it all over their house. Hellbusch then took the phone from her boyfriend and acknowledged that she had doused the home in gasoline and that "the Holy Spirit or God or somebody told her to do it, that it was written in the Scriptures and she had to do it."

Hruska immediately drove to Hellbusch's home to retrieve Hellbusch's children and to ensure their safety. As Hruska approached the home, she was able to smell gasoline. Upon Hruska's arrival, Hellbusch continued to tell Hruska that it was God's will for Hellbusch to kill her children. Hruska left that night with Hellbusch's children and she was later awarded permanent guardianship of the youngest two children in a contested guardianship proceeding. Hruska also called 911 to report Hellbusch's actions.

In Hellbusch's criminal case, the district court of Douglas County issued an order in April 2023 acquitting Hellbusch of three counts of child abuse and one count of attempted first degree arson on the grounds that she was not responsible by reason of insanity. The court found that Hellbusch did not pose a current danger to society and ordered Hellbusch to complete an evaluation by the Lincoln Regional Center for the development of a treatment plan.

Hruska testified that there was a no contact order provision in Hellbusch's criminal case. Though Hruska initially testified that the no contact order included her, because she was the children's legal guardian, she then conceded that it refers to Hellbusch's two children in her care. Hruska testified that Hellbusch's violation of the no contact order was one of the reasons she was seeking a protection order.

Hruska noted the two text messages sent by Hellbusch as detailed in her affidavit: a text message asking about birthday gifts for Hellbusch's child and another requesting prayers for Hellbusch's criminal case. Hruska testified that the message about the child's birthday gift caused

her fear because Hellbusch was violating the no contact order. When asked if Hellbusch messaging Hruska about the birthday gift made her feel harassed, Hruska affirmed and gave her reasoning: "If she's to have no contact, she's not to be contacting us."

Hruska was also concerned because Hellbusch's prayer request included a reference to God's will and Hruska understood Hellbusch to mean that it was God's will for Hellbusch to kill her children, as had been the case in April 2021. Hruska remained concerned for the safety of the children and believed that the only way for her to protect Hellbusch's children was to have a protection order against Hellbusch in place. Hruska has never responded to the text messages from Hellbusch.

Hruska acknowledged that the three text messages attached to her affidavit were not sent by Hellbusch to her, but were forwarded to Hruska from other siblings. The texts describe Hellbusch's general mental state. However, though the three attached text messages were not sent by Hellbusch, they nevertheless made Hruska fear for her safety. None of the text messages from Hellbusch to Hruska were offered into evidence. Hruska also conceded that she never told Hellbusch to stop communicating with her.

The Waterloo Chief of Police contacted Hruska in September 2023 to express concern over Hellbusch's wellbeing and state of mind. The chief provided a call report to Hruska which indicated that on September 26, an anonymous person requested a welfare check for Hellbusch because they were concerned about her mental state. The arriving officers reported that Hellbusch was found to be in good spirits, but kept diverting to her mission from God, though she would not elaborate as to the details of that mission. Hellbusch also stated several times that she had "beat her charges and got off." Hellbusch told officers that she did not want to harm herself or others and no further action was taken. The call report was received as evidence as to its effect on Hruska, and not for the truth of the matter asserted.

Hellbusch testified that she has never had a no contact order related to Hruska; Hellbusch's no contact order related to minor children under the age of 19, which included her children. However, Hellbusch believed that this no contact order ended in April 2023 upon the district court's final order in her criminal case.

Hellbusch agreed that when she poured gasoline in her home, she was following the word of God, but that the way the incident had been relayed through the proceedings was a "complete mischaracterization." Hellbusch had completed her court-ordered competency evaluation in August 2022 as well as a 1-year follow up in August 2023. She believed that her treatment plan was to include the least restrictive conditions. At the time of the evidentiary hearing, Hellbusch was not under the supervision of any doctors. She reported that the Nebraska Board of Mental Health did not deem that measure to be necessary. Hellbusch was also not taking any medications.

Hellbusch agreed that she had text messaged Hruska asking if she could buy a birthday present for her youngest child, but that Hruska did not respond to her. Hellbusch testified that the texts she sent Hruska were not harassing and that Hruska had never told Hellbusch to stop contacting her. She stated that Hruska, Hruska's husband, and Hellbusch's two children in Hruska's care, were not in any danger from Hellbusch.

Following the testimony, the district court found that Hruska carried her burden of proof to establish, by a preponderance of evidence, the truth of the facts alleged in the petition and affidavit to obtain the harassment protection order.

That same day, the district court entered a harassment protection order declaring that the ex parte harassment protection order issued on September 11, 2023, shall remain in effect for a period of 1 year from the date of the original order.

Hellbusch appeals.

## ASSIGNMENT OF ERROR

Hellbusch assigns that the district court erred in determining there was sufficient evidence to enter a harassment protection order.

## STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of facts rather than another. *Id*.

## ANALYSIS

A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). A protection order is analogous to an injunction. *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021). A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Id*.

Pursuant to Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2022), "[a]ny victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order . . ." Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016), in turn, defines the term "harass" to mean "to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person." § 28-311.02(2)(b).

In analyzing § 28-311.02, the Nebraska Supreme Court has concluded that Nebraska's stalking and harassment statutes are given an objective construction and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. See *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. See *id*.

Hellbusch argues that Hruska's concerns for the safety of the children with regard to Hellbusch's mental health status does not transform communications from Hellbusch to Hruska into harassment. We agree. Upon our de novo review of the record, we conclude that the district court erred in finding sufficient evidence to support issuance of the harassment protection order to

remain in effect for 1 year. While Hellbusch's behavior in April 2021 was unsafe and deeply concerning, the later messages to Hruska did not amount to a harassing "[c]ourse of conduct" as defined by § 28-311.02(2)(b) and applied through precedent.

The testimony offered at trial reflected that following Hruska's contact with Hellbusch on the evening of April 16, 2021, when she poured gasoline over her home in an apparent attempt to kill her children, Hellbusch did not have any contact with Hruska or the children until 2023 when Hellbusch sent Hruska two text messages. The messages included a January 2023 inquiry into potential birthday gifts for her youngest child and a prayer request in August 2023. Hruska testified that she did not respond to either text message, nor did she tell Hellbusch to stop contacting her. Hruska was fearful of the messages and found them harassing because of her lingering concerns over Hellbusch's actions in April 2021, and because Hellbusch was under a no contact order which she believed extended to Hellbusch's children and Hruska.

Hellbusch testified that she was prohibited during the pendency of her criminal case from contacting minor children under the age of 19, which included her children in Hruska's care, but that Hruska was never included in the no contact order. Though an order by the district court in Hellbusch's criminal case was entered into evidence, that order did not include a no contact provision and a separate no contact order does not appear in our record.

In her affidavit, Hruska included additional text messages from Hellbusch sent to their siblings and she offered a letter from the Waterloo Chief of Police which detailed concerns over Hellbusch's mental state. However, these communications do not evidence that Hellbusch was harassing Hruska or any of the other individuals included in her petition. Further, no evidence was adduced that Hellbusch had any direct contact or communication with Hruska's husband or her two children.

Nebraska courts have found harassment protection orders to be appropriate when the perpetrator stalks, follows, detains, restrains, or otherwise harasses the victim on several separate occasions. See, *State ex rel. Counsel for Dis. v. Lopez Wilson*, 262 Neb. 653, 634 N.W.2d 467 (2001) (harassment protection order granted after multiple occasions of harassment by attorney); *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014) (harassment protection order granted as result of continual harassing conduct by former boyfriend). See, also, *Linda N. v. William N.*, 289 Neb. 607, 615, 856 N.W.2d 436, 444 (2014) (stalking defined "to mean 'the extensive, ongoing, and escalating nature of . . . conduct' showing intent to intimidate the victim"); *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). On the other hand, this court has affirmed the dismissal of an ex parte harassment protection order due to insufficient evidence that the defendant engaged in an intimidating course of conduct. See *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013). In addition, appellate courts have reversed with directions to vacate harassment protection orders where there was insufficient evidence to satisfy the statutory definition. See, *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015); *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010); *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

In the present case, there was insufficient evidence to show that Hellbusch engaged in the type of stalking or harassment for which the statutes provide relief. The evidence did not show a knowing and willful course of conduct, evidencing a continuity of purpose; a series of acts of following, detaining, restraining the personal liberty of, or stalking Hruska, Hruska's husband, or

Hellbusch's two children; or telephoning, contacting, or otherwise communicating with them. Although Hellbusch's actions in April 2021 were troubling, they were also criminally prosecuted, and resulted in the placement of the children in the care of Hruska under a guardianship since then. The two text messages in January and August 2023 do not constitute a course of conduct necessary to support continuation of the harassment protection order.

CONCLUSION

Because there was insufficient evidence to support issuance of the protection order, the district court erred in ordering the ex parte harassment protection orders against Hellbusch to remain in effect until September 11, 2024. We reverse, and remand with directions to vacate the protection order.

REVERSED AND REMANDED WITH DIRECTIONS.